State ex rel. v. Alexander.

STATE *ex rel.* OLIVER J. TIMOTHY *et al. v.* J. D. ALEX-
ANDER *et al.**

(*Nashville.* Special Term, 1915.)

1. **COURTS. Court of civil appeals. Jurisdiction. Ouster suits.**
   Acts 1907, ch. 82, sec. 7, gives the court of civil appeals appellate
   jurisdiction of cases brought up from equity or chancery courts,
   with certain exceptions, and cases tried in the circuit and com-
   mon-law courts in which writs of error or appeals in the nature
   of writs of error are applied for, and provides that in cases in
   which appellate jurisdiction is not conferred upon such court
   appeals shall be direct to the supreme court, and writs of error,
   *certiorari,* and *supersedeas* shall be issued by that court. Ouster
   Act (Acts 1915, ch. 11), sec. 9, gives the supreme court appellate
   jurisdiction where a final judgment or decree has been rendered
   in causes instituted under that act. *Held,* that the Act of 1915
   ingrafts on the Act of 1907 an additional exception, and places
   ouster proceedings in the class of cases of which the supreme
   court is given exclusive jurisdiction, and hence the court of civil
   appeals and its judges are without jurisdiction to hear and
   determine an appeal, or an appeal in the nature of a writ of
   error, or to issue writs of *certiorari* and *supersedeas,* or ad-
   judicate the right of a party to such a writ in a suit under the
   Act of 1915. (*Post, p.* 443.)

   Acts cited and construed: Acts 1907, ch. 82, sec. 7; Acts 1915,
   ch. 11, secs. 9, 13.

2. **COURTS. Supreme court. Review of acts of court of civil
   appeals and judges thereof.**
   Acts 1907, ch. 82, sec. 8, providing that in all cases within the final
   jurisdiction of the court of civil appeals the decrees and judg-
   ments of such court shall be final, and shall not be reviewed
   by the supreme court save as therein provided, does not apply
   to cases outside the jurisdiction of the court of civil appeals,
   and when that court or one or its judges mistakenly assumes

---

*As to use of *certiorari* in exercise of superintending control
over inferior courts see note in 51 L. R. A., 33.

State ex rel. v. Alexander.

jurisdiction the supreme court is not limited to the method pre-
scribed in that act for removing cases from the court of civil
appeals for review. (*Post, p.* 446.)

Acts cited and construed: Acts 1907, ch. 82, secs. 7, 8.

Cases cited and approved: Sharp v. Rose, 130 Tenn., 228; Walker
v. Lemma, 129 Tenn., 444.

3. **MUNICIPAL CORPORATIONS.** Officers. Removal or suspen-
sion. Statutory provisions.

Acts 1915, ch. 11, sec. 8, provides relative to ouster proceedings
that, if defendant shall be found guilty, judgment of ouster shall
be rendered against him and he shall be ousted from his office.
Section 10 authorizes the court to suspend accused officers from
performing the duties of their office pending the final hearing
and determination of the matter, but further provides that no
person shall be suspended until at least five days' notice of the
application for the order of suspension shall be served upon
him, that such officer may appear and shall be entitled to a full
hearing upon the charges contained in the complaint and upon
the application for the order of suspension, and that when an
order of suspension is made the vacancy shall be filled as the
law provides for the filling of vacancies in such office. *Held,*
that an injunction restraining an officer sought to be ousted
from exercising the functions of his office would accomplish
the same result as his suspension, and, having been granted
without the required notice and hearing, was unauthorized and
beyond the power of the trial judge. (*Post, p.* 448.)

Acts cited and construed: Acts 1915, ch. 11, secs. 8, 10.

4. **CERTIORARI.** Want of excess of jurisdiction. Statutory
provisions.

Under Shannon's Code, sec. 4853, providing that the writ of *cer-
tiorari* may be granted where an inferior tribunal, board, or
officer exercising judicial functions has exceeded the jurisdiction
conferred, or is acting illegally, when in the judgment of the
court there is no other plain, speedy, or adequate remedy, it is
the duty of the supreme court to grant the writ of *certiorari*
and *supersedeas* when orders of the court of civil appeals and

State ex rel. v. Alexander.

its judges and of the circuit court are beyond the jurisdiction of those courts. (*Post, p.* 450.)

Cases cited and approved: State ex rel. v. Hebert, 127 Tenn., 220; Howell v. Thompson, 130 Tenn., 311.

Code cited and construed: Sec. 4853 (S.).

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— THOS. E. MATTHEWS, Judge.

H. S. STOKES, W. C. CHERRY and J. G. STEPHENSON, for relators.

JNO. T. LELLYETT and FRANK LANGFORD, for defendants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

In this cause two petition for *certiorari* and *supersedeas* are presented to us. Each of these petitions relates to the same subject-matter, and they can therefore be most conveniently disposed of by a single opinion.

Timothy and others, by their petition, seek to have this court cause to be transferred to its docket the entire record and all proceedings in the cause above styled, to be dealt with by this court according to law.

The substance of their petition is that, in accord with the provisions of chapter 11, Acts of 1915, they filed in the circuit court of Davidson county a petition before Hon. Thomas E. Matthews, one of the judges of said court, seeking to oust and remove from office J. D. Alexander as commissioner of fire, sprinkling, and building inspection in the municipal government of Nashville, and further seeking to oust and remove from office George W. Stainback as commissioner of streets, sewers, and sidewalks in said municipal government; also seeking an injunction restraining each of said commissioners, as the prayer of the petition sets out, from—

"exercising or attempting to exercise any right, power, or function of or pertaining to their respective offices, in which they seek to elect, or attempt to elect, any person or persons as successor or successors to any office vacated among the commissioners of the said city of Nashville, in any way, manner, or form; that this injunction issue until your honor can hear a motion to suspend the said defendants, and upon said motion being heard, and said defendants being suspended, that said injunction be made perpetual."

In response to the portion of the prayer for relief above quoted, Judge Matthews issued the following fiat:

"To the Clerk of the Circuit Court at Nashville, Tennessee: Issue the writ of injunction enjoining J. D. Alexander, commissioner of fire and building inspection of the city of Nashville, from exercising, or at-

tempting to exercise, any right, power or function pertaining to his office as said commissioner, until the further order of this court. Until further advised, I decline to issue the injunction prayed for as to Commissioner Stainback.

"July 29, 1915.

"THOMAS E. MATTHEWS, Judge."

It is shown by the petition that the foregoing fiat issued by Judge Matthews was superseded by a fiat signed by the Hon. S. F. Wilson, Presiding Justice of the court of civil appeals, upon a petition presented to him in vacation; and at the *supersedeas* issued by Judge Wilson is leveled the petition for *certiorari* and *supersedeas* herein presented by Oliver J. Timothy and others.

The petition for *certiorari* and *supersedeas* by J. D. Alexander is based on the same fiat, issued by Judge Matthews, hereinbefore set out, and seeks to have us issue the writs of *certiorari* and *supersedeas* to bring into this court and supersede the fiat issued by Judge Matthews, and, to that end, that the entire record in this cause be brought into this court, and that his right to such *supersedeas* be disposed of here.

Proceeding now to dispose of these petitions, we observe that by chapter 82 of the Acts of 1907, section 7, it is provided:

"That the jurisdiction of said court of civil appeals shall be appellate only, and shall extend to all cases brought up from courts of equity or chancery courts, except cases in which the amount involved, exclusive of

costs, exceeds one thousand dollars, and except cases involving the constitutionality of the statutes of Tennessee, contested elections for office, State revenue, and ejectment suits, and to all . . . cases tried in the circuit and common-law courts of the State, in which appeals in the nature of writs of error, or writs of error, may be applied for, for the purpose of having the action of said trial court reviewed. In all cases in which appellate jurisdiction is herein conferred upon said court of civil appeals, the appeals and appeals in the nature of writs of error from the lower court shall be taken directly to said court of civil appeals; and said court, or any judge thereof, is hereby given the same power to award and issue writs of error, *certiorari* and *supersedeas,* which the supreme court heretofore had in such cases, returnable to said court of civil appeals. The practice in such cases in said court shall be the same as is now prescribed by law for the supreme court. In all cases in which appellate jurisdiction is not conferred by the terms of this act upon said court of civil appeals, appeals therefrom shall be direct to the supreme court, and in such cases, writs of error, *certiorari,* and *supersedeas* shall be issued by and made returnable to the supreme court, as is now provided by law; and in such cases the supreme court shall have exclusive jurisdiction, and shall try and finally determine the same, and shall not, after this act takes effect, assign same for trial by the said court of civil appeals.''

Section 9 of chapter 11 of the Acts of 1915, commonly known as the Ouster Bill, in the clearest terms vests appellate jurisdiction in the supreme court of this State where a final judgment or decree has been rendered by the circuit court, by the chancery court, or by the criminal court, in a cause instituted under the provisions of that chapter. And this being true, we must read the Act of 1915 and its sections 9 and 13 *in pari materia* with the act of 1907 creating the court of civil appeals, and hold that, in respect of appellate jurisdiction in ouster proceedings, the act of 1915 ingrafted on the act of 1907 an additional exception, and placed ouster proceedings in that class of cases of which by the act of 1907 the supreme court was vested with exclusive jurisdiction, and from this it results that the following quotation from the latter part of section 7 of chapter 82 of the Acts of 1907 has direct application to, and is determinative of, the question of jurisdiction here involved. We requote from the latter part of said section 7 as follows:

"In all cases in which appellate jurisdiction is not conferred by the terms of this act upon said court of civil appeals, appeals therefrom shall be direct to the supreme court, and in such cases, writs of error, *certiorari,* and *supersedeas* shall be issued by and made returnable to the supreme court, as is now provided by law; and in such cases the supreme court shall have exclusive jurisdiction, and shall try and finally determine the same, and shall not, after this act takes effect,

assign the same for trial by the said court of civil appeals.''

We think the above-quoted part of section 7 of chapter 82 of the Acts of 1907, and section 9 of chapter 11, of the Acts of 1915, clearly demonstrate that the court of civil appeals, and the judges of that court, are wholly without jurisdiction or power to hear and determine an appeal, or an appeal in the nature of a writ of error, or to issue the writs of *certiorari* and *supersedeas,* or adjudicate the right of a party to such a writ or writs, where the predicate of any one of said methods for correction of error is a judgment or decree in a suit brought under the terms of chapter 11 of the Acts of 1915.

But it is said on behalf of Alexander that section 8 of chapter 82, Acts of 1907, provides:

''That in all cases brought up from equity or chancery courts, or from circuit or common-law courts, within the final jurisdiction of the court of civil appeals, as defined in section 7 of this act, the decrees and judgments of said court of civil appeals shall be final, and shall not be reviewed by the supreme court, save as herein provided.''

Wherefore it is urged that, whatever may be the opinion of this court touching the jurisdiction of the court of civil appeals, or one of the judges thereof, to issue the writ of *supersedeas* here involved, the hands of the supreme court are bound by the above-quoted portion of section 8, and by subsequent provisions of that section, prescribing the method by

which the supreme court may require the removal into it for review a judgment or decree of the court of civil appeals; but our answer to this insistence is that the above-quoted paragraph from section 8 applies in express terms to causes "within the final jurisdiction" of the court of civil appeals, as defined in section 7 of the act, and the last above quoted portion of section 8 does not apply at all to cases which are wholly outside the jurisdiction of the court of civil appeals, and which, by the concluding paragraph of section 7 of the act creating the court of civil appeals, are confided exclusively to the jurisdiction of the supreme court.

The mistaken assumption of jurisdiction of a cause by the court of civil appeals, or one of its judges, certainly does not confer jurisdiction of a cause upon that court, or upon one of its judges; and anything done, either by that court or one of its judges, under a mistaken assumption of jurisdiction over the subject-matter, must be treated in this court, when the question of jurisdiction is here raised, as not having been done. A contrary holding might disable the supreme court from exercising the important and exclusive jurisdiction left in it by chapter 82 of the Acts of 1907.

The case of *Sharp* v. *Rose,* 130 Tenn. (3 Thomp.), 228, 169 S. W., 765, is not in conflict with our view in the present case, for in that case, as appears from the statement of its facts, the appellate jurisdiction was clearly in the court of civil appeals under the provisions of section 7 of chapter 82 of the Acts of 1907.

The same observation just above made is true of the case of *Walker* v. *Lemma et al.*, 129 Tenn. (2 Thomp.), 444, 167 S. W., 474.

The authority of these two cases cannot be doubted; but what was said in each of those cases applies to a state of facts where the appellate jurisdiction of the court of civil appeals was clear under section 7 of chapter 82 of the Acts of 1907, while in this case it is equally clear, that the appellate jurisdiction is in the supreme court. The distinction between those cases and this one is as wide as the poles.

What we have said sufficiently indicates our view of the jurisdictional question, so far as concerns the power of Judge Wilson to supersede the action of Judge Matthews in the ouster proceeding. We think Judge Wilson was wholly without power or jurisdiction to act in the premises.

We next come to a consideration of the power of Judge Matthews to authorize by his fiat the issuance of the injunction against Alexander in the terms set out in the fiat hereinbefore copied.

Chapter 11 of the Acts of 1915, under which Judge Matthews was acting when the fiat in question was granted, does not authorize the trial court in ouster proceedings under that chapter, to grant a fiat for the issuance of an injunction. By its section 10 that chapter confers authority on such court to suspend—

"such officer or officers so accused from performing any of the duties of their offices pending the final hearing and determination of the matter."

And by its section 8 that act provides:

"That if the defendant shall be found guilty, judgment of ouster shall be rendered against him, and he shall be ousted from his office."

But section 10 of the act also provides:

"No person shall be suspended under the provisions of this act until at least five days' notice of the application for the order of suspension shall be served upon him, which notice shall set forth the time and place of the hearing of said application, and said officer shall have the right to appear and make any defense that he may have, and shall be entitled to a full hearing upon the charges contained in the complaint, and upon the application for the order of suspension; and no order of suspension shall be made except upon finding of good cause therefor. If on the final hearing of the complaint or petition herein provided, the officer is not removed from office, he shall, if he has been suspended, be immediately restored to his office," etc.

Thus it is obvious, by the terms of the act, that no order of suspension could lawfully have been made in the absence of the notice and the full hearing provided for by section 10 of the act; and it is equally clear that the right so guaranteed to an accused officer, cannot, without violation both of the letter and spirit of the act, be taken away from the officer by the issuance of injunctive process.

The petition against Alexander was filed on July 30, 1915, and the fiat of Judge Matthews is dated July 29, 1915. The injunction authorized by this fiat would

132Tenn.29

have accomplished the same result, in respect of the discharge by the accused of his official duties prohibited by the terms of the injunction, as would have been produced by a suspension from office. Thus we see the result wrought by the injunction authorized by the fiat is at war with the express letter and spirit of the act, for we find that, by the express terms of the act, when an order of suspension goes down, section 10 of the act provides:

"The vacancy or vacancies shall be filled as the law provides for the filling of vacancies in such office."

Now, the spirit or purpose of the act is that, though there may be a suspension, yet the municipality shall not be deprived of the benefit of an incumbent of the office legally authorized to discharge its duties, while its former incumbent is disabled therefrom by the judgment of suspension. So the conclusion to which we are driven is that the granting of the fiat for the writ of injunction and the writ issued under the grant were quite clearly beyond any power possessed by the trial judge, and distinctly contrary to the letter and purpose of the act, and consequently void in law.

Section 4853 of Shannon's Code provides:

"The writ of *certiorari* may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

See, also, *State ex rel.* v. *Hebert,* 127 Tenn. (19 Cates), 220, 154 S. W., 957; *Howell* v. *Thompson,* 130 Tenn. (3 Thomp.), 311, 170 S. W., 253.

Having reached the foregoing conclusions, it becomes the duty of this court to grant the writ of *certiorari* and *supersedeas* as prayed for in each of the petitions; and the record of the proceedings being now before the court, the injunction, and the fiat authorizing the issuance of the same, are held to be void in law, and of no effect.