### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION.

### DECEMBER TERM, 1920.

C. RUNCIE CLEMENTS *et al. v.* A. H. ROBERTS, Governor, *et al.*

### (*Nashville,* December Term, 1920.)

1. **CERTIORARI.** Supreme court rule requiring notice to adverse attorney of filing of petitions applicable only to final judgments.

Supreme court Rule No. 10 (160 S. W. viii), providing for five days' notice of filing of petition for *certiorari* and *supersedeas* to opposite counsel, is applicable only to final decree or judgments and not to interlocutory orders or decrees rendered by inferior courts without or in excess of the jurisdiction, or where such courts acted illegally. (*Post, p.* 143.)

Cases cited and approved: State v. Hebert, 127 Tenn., 241; Conners v. City of Knoxville, 136 Tenn., 432; State ex rel. v. Alexander, 132 Tenn., 447; Legate v. Ward, 45 Tenn., 451; Combs v. Vogeli, 66 Tenn., 272; Mowry v. Davenport, 73 Tenn., 84.

Cases cited and distinguished: Railroad v. Campbell, 109 Tenn., 645.

Codes cited and construed: Secs. 4853, 4864 (S.).

Constitution cited and construed: Art. 2, sec. 32;

Clements et al. v. Roberts et al.

2. **CERTIORARI.** Petition held to disclose grounds for both common-law and statutory writs.

Defendant's petition to the supreme court for writs of *certiorari* and *supersedeas*, alleging that there was a total absence of jurisdiction in the circuit court to grant injunctions and that the court in granting such injunctions had exceeded its jurisdiction and had acted illegally, *held* to disclose grounds of writ under the common law and also under Shannon's Ann. Code, Sec. 4853. (*Post, pp.* 143, 144.)

Case cited and approved: Howell v. Thompson, 130 Tenn., 313.

Code cited and construed: Secs. 5737, 5738, 6348 (S.).

3. **CONSTITUTIONAL LAW.** Circuit court without jurisdiction to enjoin state officials from certifying ratification of amendment to United States Constitution.

The circuit court had no jurisdiction to enjoin the governor of the State, the secretary of State, and the speakers of the senate and house of the general assembly from taking steps to adopt resolution of ratification of proposed amendment to the United States Constitution and from certifying the adoption thereof, on the ground that the submission of the resolution was, in violation of Constitution, article 2, section 32, since the legislature in passing on the resolution of ratification, and the governor in certifying the passage thereof, and the secretary of State and the speakers of the senate and house in the performance of their duties with respect to the resolution, were acting within their proper spheres with the right to judge for themselves the constitutionality of the resolution, and there could be no right to attack it as unconstitutional until its promulgation by the secretary of State and the United State. (*Post, pp.* 144-151.)

Cases cited and distinguished: Turnpike v. Brown, 67 Tenn., 490; Bates v. Taylor, 87 Tenn., 326; State ex rel. v. Board of Inspectors, 114 Tenn., 516; Mississippi v. Johnson, 71 U. S., 475; Richardson v. Young, 122 Tenn., 471.

---

**FROM DAVIDSON.**

---

Bill in the chancery court of Davidson county by C. Runcie Clements and others against A. H. Roberts, Governor, and others, wherein an injunction was granted by Circuit Judge E. F. Langford, and defendants petitioned Chief Justice Lansden for *certiorari* and *supersedeas*. Complainant moved to have writs of *certiorari* and *supersedeas* quashed, and the petition filed therefor dismissed. Motion denied, petitions for writs of *certiorari* and *supersedeas* sustained, the proceeding of the lower court quashed, and bill dismissed.—Hon. E. F. LANGFORD, Judge.

E. J. SMITH, NORMAN FARRELL, THOS. H. MALONE and THOS G. WATKINS, for complainants.

F. M. THOMPSON, Attorney-General, for defendant.

MR. JUSTICE HALL delivered the opinion of the Court.

On August 21, 1920, the complainants, C. Runcie Clements, Rufus E. Fort, Edward Buford, Dudley Gale, James A. Yowell, and A. S. Warren, citizens of Davidson and Robertson counties, filed their original bill in the Second Chancery Court of Davidson county, Tenn., against A. H. Roberts, governor of the State of Tennessee, Ike B. Stevens, secretary of State of Tennessee, A. L. Todd, speaker of the senate of the general assembly of the State of Tennessee, and Seth M. Walker, speaker of the house of the general assembly of the State of Tennessee, to enjoin them and each of them from taking steps to certify the adoption or ratification of the Nineteenth Amendment to the constitution of the United States, known as the "Suffrage Amendment," by the general assembly of the State of Tennessee, and from

taking any official action with reference to the alleged illegal action of the special session of the general assembly of the State of Tennessee purporting to ratify said Nineteenth Amendment, and praying further that the action of the said special session of said general assembly, by which it attempted to ratify said amendment, be declared illegal, unconstitutional, and void because in violation of article 2, section 32, of the constitution of the State.

The bill alleged that complainants were citizens and taxpayers of the State of Tennessee, and were duly qualified voters under the constitution and the laws of said State, and the constitution and laws of the United States.

The bill further alleged that the Congress of the United States had submitted to the various States the proposed amendment to the effect that the rights of citizens of the United States to vote shall not be denied or abridged by any State on account of sex, known as the suffrage amendment to the Constitution of the United States; that article 2, section 32, of the constitution of the State of Tennessee, provides as follows:

"No convention or general assembly . . . shall act upon any amendment of the Constitution of the United States proposed by Congress to the several States; unless such convention or general assembly shall have been elected after such amendment is submitted."

That the legislature of Tennessee then in session was elected by the qualified voters of the State in the year 1918, before said suffrage amendment had been proposed by the Congress or submitted to the legislatures of the several States; that notwithstanding the imperative di-

rection and command of the constitution of Tennessee, the defendant A. H. Roberts, as governor of the State, had theretofore issued a call for the special session of the general assembly of the State to be held at the Capitol of the State in the city of Nashville, beginning August 9, 1920, and in calling said special session he embraced the question of acting upon the proposed suffrage amendment, thereby submitting it to the general assembly of the State of Tennessee, which was elected in the year 1918, as aforesaid, and before the said suffrage amendment had been proposed by the Congress, all of which it was alleged was in violation of the above-quoted article and section of the constitution of Tennessee; that this was done upon the theory that the above-quoted section of the constitution of the State of Tennessee conflicts with article 5 of the constitution of the United States, which theory was wholly unsound, the bill alleging that there was no conflict between said constitutions on the subject of ratifying amendments to the constitution of the United States.

The bill further alleged that the general assembly was then in session, pursuant to said call; that the senate had already voted favorably upon said resolution for ratification, and that the house committee had reported favorbly upon said resolution, which report of the house committee came up for action on August 18, 1920, at which time an effort was made to have the house of representatives adopt the report of said committee and pass said illegal and unconstitutional resolution; that upon a motion to table the same the vote stood forty-eight votes for and forty-eight votes against the motion, there being ninety-six members of said house of representatives

present, the motion therefore failing; that a vote was then taken upon the adoption of said illegal and unconstitutional resolution, and forty-eight members voted for the adoption of the same and forty-seven members voted against its adoption, one member not voting; that at the close of the roll call said member cast his vote in favor of the resolution, thus making the vote stand forty-nine for and forty-seven against said resolution; that before said vote was officially announced one of the members, who had voted against said resolution, changed his vote from no to aye, and gave notice of a motion to reconsider; the final vote therefore stood fifty members voting aye and forty-seven members voting no; that under the rules of said house a motion to reconsider may be brought up and acted upon within two days. The bill alleged that said motion to reconsider had not then been made, but the bill alleged upon information and belief that it would be made on Friday, August 20, 1920.

It was further alleged by complainants upon information and belief that the said A. H. Roberts, Governor, had actively worked for the passage of said illegal and unconstitutional resolution, and had evidenced his willingness in every way to aid its passage, which complainants were advised was contrary to his duty, which duty was to uphold and sustain the constitution of the State of Tennessee. And that the said Ike B. Stevens, secretary of State, occupied a like position with regard to said resolution, and was anxious that the same be passed and adopted, although he had not been so open in his efforts to effect its passage, and that should said motion to reconsider said alleged resolution fail to pass the house, an effort

Clements et al. v. Roberts et al.

would be made to rush or telegraph a certificate to the secretary of State at Washington, or even to announce said alleged certificate over the telephone, and that said secretary of State at Washington had announced his intention of proclaiming the adoption of said Nineteenth Amendment even upon the receipt of a telephone or telegraph message; that such methods were wholly illegal, and would be, if resorted to, an effort to stiflle the views of the people of the State of Tennessee, and to oust the lawful authority of its courts and prevent the hearing of said matter in the tribunals of justice; that if such wrongful and illegal methods were pursued it might have the effect of cutting complainants off from a hearing when the ministerial act of certification was accomplished; however wrongful and irreparable injury would thus ensue, not only to complainants in their capacity of qualified voters, which right to vote is a valuable property right, but would likewise result to several hundred thousand other voters of the State, on whose behalf complainants also institute said suit.

In accordance with the prayer of said bill, a *fiat* for a preliminary injunction was granted by the Honorable E. F. Langford, one of the circuit judges of Davidson county, Tenn., on the 19th day of August 1920, and the defendants were enjoined from making, signing issuing, or making any proclamation, declaration, resolution, or certificate declaring that the State of Tennessee had constitutionally and legally adopted the proposed Nineteenth Amendment to the constitution of the United States, and from taking any official action with reference to the illegal action of the special session of the general assembly of the State of

Tennessee purporting to ratify and adopt the Nineteenth Amendment to the constitution of the United States.

Thereafter, on August 23, 1920 an amended and supplemental bill was filed by the same parties against the same defendants, both in their official and individual capacities, and also against W. M. Carter, clerk of the senate of said general assembly, and John Green, clerk of the house of said general assembly, both in their official and individual capacities.

In this amended and supplemental bill the allegations in the original bill were set out and reiterated, and in addition certain other allegations were made, among them being that, notwithstanding the defendants to the original bill were specifically enjoined from taking the action therein alleged, the defendants Carter and Green, as clerks of said senate and house, respectively, had been instructed by parties to the complainants unknown to sign, certify, and proclaim the illegal and unconstitutional action of said Senate and House purporting to adopt said resolution, and that unless restrained by injunctive process the defendants Carter and Green would attempt to proclaim said illegal and unconstitutional action in obedience to the orders of some of said defendants, who had theretofore been enjoined under the original bill, and who would not themselves attempt to make any certificate or proclamation because they had been enjoined from so doing.

The amended and supplemental bill prayed that the defendant Green, as clerk of the house, be enjoined from transmitting, and the defendant Carter, as clerk of the senate, be enjoined from receiving or communicating to

the members of the senate, or to any other party, said resolution so unlawfully attempted to be adopted, and that said defendants, and each of them, be enjoined from in any way certifying, signing, proclaiming, or promulgating the alleged adoption by the senate and house of representatives said illegal resolution to any person whomsoever, and that the injunction theretofore issued as to the other defendants be broadened and enlarged so as to include defendants Green and Carter.

On August 22, 1920, upon the *fiat* of the Honorable E. F. Langford, circuit judge, an injunction was issued and served upon the defendants Green and Carter in accordance with said prayer.

On August 23, 1920, defendants A. H. Roberts, as governor, and individually; Ike B. Stevens, as secretary of State, and individually; A. L. Todd, as speaker of the senate, and individually; and W. M. Carter, as clerk of the Senate, and individually—presented their petition for writs of *certiorari* and *supersedeas* to the Honorable D. L. Lansden, a member and Chief Justice of this court, which contained many allegations, among them, that the Honorable E. F. Langford, circuit judge, in issuing said *fiat* and injunction upon the allegations contained in the original and amended and supplemental bills had exceeded the jurisdiction conferred upon him as circuit judge, and had acted illegally, and his action in granting said injunction against petitioners was therefore void; that petitioners were without a plain, speedy, and adequate remedy, except by petition for the writ of *certiorari,* and as ancillary thereto, the writ of *supersedeas* to bring said cause into this court for review, and to supersede said

*fiat* and injunction, and to the end that the error, wrong, and injury committed by the said E. F. Langford, circuit judge, be corrected, and his action annulled and said original and amended and supplemental bills be dismissed.

Without setting out in detail the allegations of said petition it may be said that it proceeded upon the theory:

(1) That as to the governor, the courts were without jurisdiction to hamper or interfere with him in the performance of his duties as governor, and that the original and amended and supplemental bills showed that the consideration and adoption of said resolution ratifying the Nineteenth Amendment to the constitution of the United States was legislative in its character, and that he was in the performance of an executive duty with respect to the same, imposed upon him by law, and by the resolution itself, and that his discretion, in the performance of these duties could not be made the subject of injunctive process.

(2) That the bills disclosed that the said acts to be performed by the legislature and the governor were but steps in the adoption, ratification, and promulgation of said resolution, and therefore said bills were premature and the court was without jurisdiction.

(3) That as to the secretary of State, there was no jurisdiction either of the person or the subject-matter because, under the law, the secretary of State had no duty whatever to perform, and could only affix the seal of the State to said resolution, or certificate, when ordered by the governor to do so, and hence his acts, under the law, were the acts of the governor, which could not be restrained by injunction. And further, that all acts to be performed by him were shown to be acts to be done prior to

---

Clements et al. v. Roberts et al.

---

the promulgation of said ratification of said amendment, and hence the suit as to him was premature.

(4) As to said petitioner Todd and said Speaker Walker, the court was without jurisdiction because they were spearkers respectively, of the house and senate of the general assembly, which was a co-ordinate department with that of the judiciary of the state, and that the acts complained of by them and sought to be enjoined were but steps to be taken in the adoption of said resolution, and for this reason the judiciary could not interfere with them in the performance of their official duties, and was without jurisdiction to do so.

(5) That to said Green and Carter, clerks, respectively, of the senate and of the house, the same rule which applied to the speakers applied to them, and hence the court was without jursdiction to interfere with them in the performance of their official duties.

(6) That as to all of said petitioners the bills disclosed that both they and the legislature were performing the political functions of ratifying or rejecting an amendment to the federal constitution under article 5 thereof, from which alone they derived their power and jurisdiction, and in the discharge of which duty, as agents of the federal government, they were not amenable to any court, or subject to be restrained by injunctive process, but could only be held amenable as political agents or representatives. And further that, even then, their acts in this capacity were only steps in the consummation of said political function which had not been completed, and hence the suit was premature. And for all of which reasons, there was either a want of jurisdiction over

them in their political capacities, as agents of the federal government and the State government, or as individuals.

On August 23, 1920, at 8:57 p. m., the Chief Justice of this court issued his *fiat* in accordance with the prayer of the petition, and on August 24, 1920, at 8:55 a. m., said petition was filed in the office of the clerk of this court at Nashville, after which said writs of *certiorari* and *supersedeas* were issued by the clerk of this court as prayed for in the petition, and were served upon the clerk of the chancery court.

On November 20, 1920, complainants prepared and had served upon counsel for petitioners a notice that they would, at the present term of this court move to have said writs of *certiorari* and *supersedeas* quashed, and to dismiss the petition filed therefor upon the following grounds:

(1) Because said application was made and said writs issued without notice to opposing counsel, and without excuse for failure to give such notice, and in violation of rule 10 of this court (160 S. W. viii).

(2) Because said writs were issued to supersede a negative injunction.

(3) Because the court had no power or jurisdiction to issue said writs.

(4) Because, in so far as said petition seeks to have a hearing on the merits of the original and amended and supplemental bills, no pleading has been filed by defendants, and no decree made by the chancellor, and this court is without jurisdiction to hear and determine the cause upon the merits; the jurisdiction of this court being appellate only.

(5) Because this court has no jurisdiction of the merits of this controversy under the petition.

(6) Because the petition fails to show that petitioners are entitled to any of the relief prayed for in their petition.

Petitioners have moved the court to quash said proceedings and dismiss said original and amended bills for the reasons set forth in their petiton for writs of *certiorari* and *supersedeas,* which motion was preceded by seasonable notice to complainants.

By section 4853 of Shannon's Annotated Code it is provided:

"The writ of *certiorari* may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

*In Railroad* v. *Campbell,* 109 Tenn., 645, 75 S. W., 1012, it was said:

"The writ of *certiorari* does not owe its existence to constitutional provision or statutory enactment. It is a common-law writ, of ancient origin, and one of the most valuable and efficient remedies which come to us with that admirable system of jurisprudence.

"This court, the highest tribunal in the State, with appellate and supervisory jurisdiction over proceedings and judgments of all inferior courts, has the inherent power to grant it whenever necessary in the exercise and enforcement of this jurisdiction. It is not restricted from its use by section 10 of article 6 of the constitution, providing that the judges of inferior courts of law and

equity shall have power to issue it in civil cases to remove them from any inferior jurisdiction into a court of law. This provision was only intended as a guaranty of the continuance of a power with which these judges were already vested."

The court in that case further said: "It is fully authorized by the general provisions contained in the Code for the correction of errors in the judgments of inferior courts, which include *certiorari* as one of the means by which this may be done; and it is there provided that it may be granted whenever authorized by law, and in all cases where an inferior tribunal exercising judicial functions has exceeded its jurisdicton or is acting illegally, when, in the judgment of the court, there is no other plain, speedy or adequate remedy and that it will lie on a suggestion of diminution, where no appeal is given, as a substitute for an appeal, and instead of a writ of error."

To the same effect is the holding of this court in *State v. Hebert*, 127 Tenn., 241, 154 S. W., 957, and in *Conners v. City of Knoxville*, 136 Tenn., 432, 189 S. W., 870.

In *State ex rel. v. Alexander*, 132 Tenn., 447, 178 S. W., 1107, this court, under a proceeding identical with that taken by petitioners, that is, *certiorari*, and as ancillary thereto, a *supersedeas*, reviewed the action of the circuit court of Davidson county, Tenn., granting an injunction enjoining J. D. Alexander, commissioner of fire and building inspection of the city of Nashville, from exercising, or attempting to exercise, his rights, powers and functions, pertaining to his office as said commissioner, and held the injunction and the *fiat*, authorizing its issuance, void and of no effect.

The only provision in the statute with reference to notice is contained in section 4864 of Shannon's Annotated Code. This section provides as follows:

"No *supersedeas* shall issue upon application *in forma pauperis,* without express order of the judge dispensing with security. Such order may be made by the judge only on notice to the adverse party of the application."

It has been held by this court that this statute is merely directory and not imperative, and such notice is waived by the voluntary appearance of the adverse party. *Legate* v. *Ward,* 5 Cod., 451; *Combs* v. *Vogeli,* 7 Baxt., 272; *Mowry* v. *Davenport,* 6 Lea. 84.

In *Combs* v. *Vogeli, supra,* this court held that a *fiat* for a *supersedeas,* issued upon the pauper's oath, without notice, is not void; but that the petition is subject to be dismissed for the error in the issuance of the *supersedeas* without notice.

We do not think rule 10 of this court relating to writs of error and *supersedeas,* or to writs of *certiorari* and *supersedeas* to revise, reverse, and supersede judgments of the trial court, applies to interlocutory orders or decrees rendered by inferior courts not having jurisdiction to render them, or where such interlocutory orders or decrees are in excess of the jurisdiction of such courts, or where such courts acted illegally. It only applies to final decrees or judgments, both in relation to *certiorari* and *supersedeas* and writs or error and *supersedeas.*

We think the record discloses grounds for both the common-law and statutory writs of *certiorari.* There

was ground for the common-law writ of *certiorari,* because the petition alleged that there was a total absence of jurisdiction in the lower court to grant said injunctions. And there was ground for the statutory writ, because the petition alleged that there had been an exercise of judicial functions by the lower court in excess of its jurisdiction, and that said court had acted illegally.

We are of the opinion that there is nothing in the case of *Howell* v. *Thompson,* 130 Tenn., 313, 170 S. W., 253, which is relied upon by counsel for complainants, that effects petitioners' right to writs of *certiorari* and *supersedeas* under the facts disclosed by the record in the instant cause. In that case a *supersedeas* alone was applied for under sections 5737, 5738, and 6348 of Shannon's Annotated Code. In that case a *supersedeas* alone was sought as a primary method of reviewing the action of the lower court in granting an injunction against the attorney general of the State, while the *supersedeas* in the instant cause was only ancillary to the writ of *certiorari.* The writ of *certiorari* operated to bring the cause from the lower court into this court for review, and for such action by this court as the facts and law warranted.

We think, therefore, that the petitioners pursued the proper remedy, and the only remedy open to them to stay the proceeding of the lower court, which the petition expressly alleged, was illegal and void.

We will now proceed to dispose of the question of the alleged illegality of the action of the lower court in granting the injunctions against petitioners. After a careful examination of the authorities, we are of the

Clements et al. v. Roberts et al.

opinion that the lower court was wholly without juris-
diction to grant said injunctions, and in doing so it acted
illegally.

In *Turnpike* v. *Brown,* 8 Baxt., 490, 35 Am. Rep., 713,
it was expressly held that the courts of this State have
no jurisdiction, by mandamus, to compel the governor
to perform any duty devolved upon him as such officer
by the constitution and laws of the State. In that case
the court said:

"As to purely executive or political functions devolv-
ing upon the chief executive officer of a State, or as to
duties necessarily involving the exercise of official judg-
ment and discretion, we think it may be safely assumed
that mandamus will not lie. This necessarily results
from the nature of a government having three inde-
pendent departments—executive, legislative, and judi-
cial. Such is the doctrine well settled by authority."

In that case the court quoted with approval from High
on Extraordinary Remedies as follows:

"As to duties of a ministerial nature, and involving
no element of discretion, which have been imposed by
law upon the governor of a State, the authorities are
exceedingly conflicting, and, indeed, utterly irreconcil-
able. Upon the one hand it is contended, and with much
show of reason, that as to duties of this character the
general principle allowing relief by mandamus against
ministerial officers should apply, and the mere fact of
ministerial duties having been required of an execu-
tive officer should not deter the courts from the exercise
of their jurisdiction. Upon the other hand it is held that
under our structure of government, with its three dis-

tinct departments—executive, legislative, and judicial—each department being entirely independent of the other, neither branch can properly interfere with the duties of the other, and as to the nature of the duties required of the executive department by law, and as to its obligations to perform these duties, it is entirely independent of any control by the judiciary. While the former theory has the support of many respectable authorities, and is certainly in harmony with the general principles underlying the jurisdiction as applied to purely ministerial officers, the latter has the clear weight of authority in its favor, and may be regarded as the established doctrine upon this subject.''

To the same effect is the holding of this court in *Bates* v. *Taylor,* 87 Tenn., 326, 11 S. W., 266, 3 L. R. A., 316. That was a proceeding brought to mandamus the governor, and to require him to deliver a certificate already prepared, signed, the seal of the State affixed, and countersigned by the secretary of State, which was in his possession, to a candidate for a member of the Congress, to enjoin him from preparing and issuing another certificate to the opposing candidate. This court, after citing the case of *Turnpike* v. *Brown, supra,* said:

''We have no hesitation in holding that the courts have no jurisdiction to compel the governor to deliver to complainant the certificate claimed by him. No more have they the power to restrain him from issuing a certificate to the other applicant. If the governor cannot be compelled by mandamus to deliver a certificate of election to one person, it follows that he cannot be restrained by injunction from delivering it to another per-

son, for the nature of the act to be performed by him is precisely the same in one case as in the other, and the same considerations operate to defeat the jurisdiction of the courts in both instances.''

Again, in *State ex rel.* v. *Board of Inspectors,* 114 Tenn., 516, 86 S. W., 319, which was also a mandamus proceeding against the governor, secretary of State, and attorney general, constituting the board of inspectors of elections, to compel them to compare the vote for joint representative in Hawkins and Sullivan counties in an election which had been held, and to declare the person receiving the highest number of votes duly elected, this court said:

" The governor of the State constitutes one of the co-ordinate departments of the government, and he cannot be compelled by mandamus to perform any act which devolves upon him as governor.''

In that case the court further said with reference to the governor:

''He is not subject to the mandate of any court. No court can coerce him. No court can imprison him for failing to perform any act, or to obey any mandate of any court. This holding is in accord with that of other courts in other States, though the contrary is held in some cases in regard to ministerial acts.''

In *Mississippi* v. *Johnson,* 71 U. S., 475, 18 L. Ed., 441, an effort was made to enjoin President Johnson from enforcing the reconstruction acts. The supreme court of the United States, in passing upon the power of the courts to interfere with the duty of the President to enforce said acts, speaking through Chief Justice CHASE, said:

"It will hardly be contended that Congress can interpose in any case to restrain the enactment of an unconstitutional law, and yet, how can the right to judicial interposition to prevent such an enactment, when the purpose is evident and the execution of that purpose certain, be distinguished in principle from the right to such interposition against the execution of such a law by the President? The Congress is the legisative department of the government; the President is the executive department. Neither can be restrained in its action by the judicial department; though the acts of both, when performed, are, in proper cases, subject to its cognizance. The impropriety of such interference will be clearly seen upon the consideration of its possible consequences. Suppose the bill filed and the injunction prayed for allowed. If the President refuse obedience, it is needless to observe that the court is without power to enforce its process. If, on the other hand, the President complies with the order of the court and refuses to execute the acts of Congress, is it not clear that a collision may occur between the executive and legislative departments of the government? May not the house of representatives impeach the President for such refusal? And in that case, could this court interfere in behalf of the President thus endangered by compliance with its mandate and restrain by injunction the Senate of the United States from sitting as a court of impeachment? Would the strange spectacle be offered to the public wonder of an attempt by this court to arrest proceedings in that court? These questions answer themselves."

The bills disclose that it was the duty of the general assembly of the State of Tennessee to pass on the resolution in question, and either adopt it or reject it. The duty was likewise imposed upon the governor of certifying the action of the legislature on said resolution as required by law, and even if it were true that said resolution was about to be unconstitutionally passed or adopted, this afforded no ground for interference by the courts, because both the legislature and the governor were acting within their proper spheres, and each had the right to judge of the constitutionality of said resolution. After the passage of said resolution, and after it was certified to the secretary of State of the United States, and by him duly promulgated, then a right of action would have laid in favor of complainants, but not until then. The courts could no more enjoin the passage of said resolution by the legislature, and its certification by the governor, than they could enjoin the passage of any bill by the legislature and enjoin the governor and the speakers of the respective houses from signing said bill after it was passed; on the ground that it was unconstitutional.

As to the secretary of state, the petition discloses that under the constitution and statute of this State, as well as under the resolution itself, he had absolutely no duty to perform. He is not the custodian of the seal of the State; he can only affix the seal when directed to do so by the governor. The governor had the right, in making the certificate to said resolution, to affix the seal himself, which he, in fact, did do. If the secretary of State had affixed the seal to the certificate of the governor, and had signed it, his only authority for doing so would have been the

order of the governor, and the governor's order in this regard could not be trammeled or controlled by the court.

What has been said with respect of the acts of the governor applies with equal force to Todd and Walker, as speakers of the senate and house, respectively; and to Carter and Green, as clerks of the senate and house, respectively. The bills show that their duties with respect of said resolution were duties to be performed by them as members of the legislative department of the government. The State constitution divides the powers of the government into three independent co-ordinate departments, viz., legislative, executive, and judicial, with express prohibition against any encroachment by one department upon the powers and prerogatives of either of the others, except in particulars authorized by the constitution.

In *Richardson* v. *Young,* 122 Tenn., 471, 125 S. W., 664, this court, in defining "legislative," "executive," and "judicial" powers, said:

"The constitution does not define in express terms what are legislative, executive, or judicial powers.

"Theoretically the legislative power is the authority to make, order, and repeal; the executive, that to administer and enforce; and the judicial, that to interpret and apply, laws."

We think the acts which complainants, in their bills, sought to enjoin the two speakers from performing, fell strictly within their powers as members and officers of the legislature, and could not be interfered with by the courts. We think the same is true of the acts which it was sought to enjoin the respective clerks from performing. They were simply obeying the mandate of the two houses

of the general assembly, and were performing the duties required of them with respect to said resolution. Indeed, the things which the bills sought to enjoin, and which were enjoined, were necessary steps to be taken by said speakers and clerks in the adoption and ratification of said amendment, and the court was without jurisdiction to interfere with them in the performance of their duties as officers of the legislature.

It results that.the motion of complainants to quash the writs of *certiorari* and *supersedeas* and dismiss the petition, upon which said writs were issued, is denied; and the court being of the opinion that the court below was without jurisdiction and acted illegally in granting the injunctions upon the allegations contained in complainants' bills, the petition for writs of *certiorari* and *supersedeas* is sustained, and the proceeding of the lower court will be quashed and said bills will be dismissed.

Complainants are taxed with costs accruing both in this court and in the court below.