Gilbreath v. Willett.

SIDNEY G. GILBREATH V. CHAS. L. WILLETT *et al.*＊

(*Nashville.* December Term, 1922.)

1. **CERTIORARI.** Supersedeas. Where chancellor acting illegally or in excess of jurisdiction, Supreme Court may grant certiorari and supersedeas.

Where the chancellor is acting illegally, or in excess of his jurisdiction, the supreme court may grant writs of *certiorari* and *supersedeas.* (*Post, p.* 99.)

Cases cited and approved: Clements et al. v. Roberts et al., 144 Tenn., 129; State ex rel. v. Alexander, 132 Tenn. 439.

2. **CONSTITUTIONAL LAW.** Right of legally constituted legislative committee to function is political, of which courts have no jurisdiction.

If a legally constituted legislative committee is discharging its ·legal and constitutional functions, the question of its right to function is purely political, of which the courts have no judisdiction. (*Post, p.* 99, 100.)

3. **INJUNCTION.** Injunction lies to restrain action of illegally appointed investigating legislative committee.

If the resolution of the legislature creating a committee charged with the duty of investigating the .conduct of the president of a State institution is unconstitutional and illegal, injunction will lie to enjoin it from action. (*Post, p.* 100.)

Case cited and distinguished: Richardson v. Young, 122 Tenn., 471.

Constitution cited and construed: Art. 3, sec. 18.

4. **STATUTES.** Legislative investigating committee,· created by resolution not signed by Governor, held unconstitutional and void.

Under Constitution, article 3, section 18, providing that every joint resolution or order shall be signed by the Governor before it shall take effect, a resolution appointing a committee with power to investigate the alleged immoral conduct of the president of a State

---

＊For authorities discussing power of legislature, or branch thereof, to appoint a committee to sit after close of session see 10 L. R. A. (N. S.), 172 and L. R. A., 1915E, 496

Gilbreath v. Willett.

institution, which resolution was not signed by the Governor, is by reason thereof unconstitutional and void, and affords no authority to those attempting to act under it . (*Post, p.* 100-105.)

Cases cited and approved: State ex rel. Peyton v. Cunningham, 18 A. & E. Ann. Cas., 705; Olds v. State Land Commissioner, 134 Mich., 442; Mullan v. State, 114 Cal., 578; Collier & C. Lithographing Co. v. Henderson, 18 Colo., 259; Boyers v. Crane, 1 W. Va., 176; May v. Rice, 91 Ind., 546; Hiram B. Burritt v. State Contract Com'rs, 120 Ill., 322.

Cases cited and distinguished: Commercial & Farmers' Bank v. Worth, 117 N. C., 147; Dickinson, State Auditor, v. Johnson, 117 Ark., 582; Tipton v. Parker, 71 Ark., 193.

## FROM WASHINGTON.

Error to the Chancery Court of Washington County.— HON. HAL H. HAYNES, Chancellor.

THAD A. COX, BEN H. TAYLOR, GEO. N. BARNES, CARTER & MCKINNEY, A. D. HUGHES, GUY S. CHASE, LEE B. HARR, PRICE & CHASE, E. J. VAUGHT, JAMES R. WORLEY, O. M. FAIR, E. C. REEVES, FRED M. LEWIS, J. DELANEY DEPEW, J. R. SIMMONDS, J. R. GARDNER, G. T. LEE, LEE F. MILLER and E. B. HENSLEY, for appellants.

FRANK M. THOMPSON, Attorney-General, and DIVINE & GWINN, for defendants.

MR. MALONE, Special Judge, delivered the opinion of the Court.

This is an application by the defendants Willett and others for writs of *certiorari* and *supersedeas* to review an

interlocutory decree of the chancery court of Washington county, refusing to dissolve a preliminary injunction sought and obtained by the complainant Gilbreath.

Shortly before the adjournment of the general assembly of the State, at its 1923 session, a joint resolution, No. 47, was passed and signed by the speakers of the two houses but not by the governor.

By this resolution a committee was created, charged with the duty of investigating the conduct of the complainant Gilbreath, president of the East Tennessee State Normal School, with respect to certain charges of immoral conduct which had been made against him.

This resolution gave the speaker of each house the power to appoint two members, and the investigating committee was authorized to carry on its investigation after the final adjournment of the legislature.

The resolution also gave the committee power to summon and examine witnesses; to examine the books, records, and other documents of the school; to employ an expert stenographer to take down the evidence introduced before the committee; and it was given the power to punish for contempt any witness who should fail to obey a summons from the committee.

The committee was given authority to visit the East Tennessee Normal School for the purpose of gathering evidence, and all other general powers necessary to make a complete investigation of said charges, and to report its findings thereon.

It was further resolved:

"That said committee meet and conduct said investigation immediately upon the final adjournment of the legislature and report their findings to the governor as soon as

possible, who upon said report shall make the proper recommendations based upon said recommendation to the State Board of Education."

The bill charges that while the resolution provided for only two members from each house, the speaker of the House appointed three members on said committee, to-wit, the defendants Charles Willett, H. M. Candler, and J. W. Hamilton; that the speaker of the Senate appointed the other two defendants, Jno. D. Wiseman and E. E. Butler.

Under date of April 14, 1923, four members of said committee, to wit, the defendants Willett, Wiseman, Candler, and Butler, served a formal notice upon the complainant as president of the East Tennessee State Normal that—"The committee appointed to investigate and report on certain alleged conditions existing at said normal, will convene for the purpose in Johnson City, Tennessee, on Tuesday, April 17, 1923, at 10:00 o'clock a. m."

Thereupon, on April 17, 1923, the original bill herein was filed by the complainant Gilbreath as a citizen and taxpayer, and as president of the East Tennessee State Normal School against the four members above mentioned, and also J. W. Hamilton of Hawkins county (the third man appointed by the. speaker of the House) "as individuals and as a purported committee of the general assembly of the State of Tennessee, sitting and attempting to hold sessions, as such committee, at Johnson City, Tennessee."

The bill recited the passage of the joint resolution above mentioned and various other proceedings of the legislature preliminary thereto, not necessary to be here reviewed, and attacked the validity of the resolution and of the proposed action of the committee, alleging their unconstitutionality and illegality on numerous grounds.

It was stated that, by reason of certain statutes, the management and control of all state normal schools were placed in the hands and under the power of the State Board of Education.

It is further said: "Complainant alleges that he has a contract with said board, duly executed thereby, by which he was employed by said board to take hold and administer the affairs of the East Tennessee State Normal School as its president, and to do and perform the services and duties prescribed by said contract, and by law, for the term of three years from the date of said contract, which will not expire until the 30th day of June, 1924, so that he now holds and is bound by and is entitled to the obligations and rights created and assumed by said instrument. He is entitled to retain said office for the remainder of said period of three years, which term will not expire until the date last above given. He is entitled to be paid the salary therein agreed upon and to receive the emoluments belonging to the office and position conferred upon him by said board and said contract; in which said office, position, and employment he has vested rights and franchises of which he cannot be deprived, except by due process of law."

After characterizing the charges which had been made as being based on mere rumors and reports, the complainant says in his bill:

"In fact, being ignorant of what the charges consist, he cannot answer them, except by a general denial of whatever the charges may allege, if they allege anything. He has been at the head of said school, as its president, for thirteen years; and, while he has made some enemies who have been or are still seeking to injure him in any possible way, even resorting to means and practices which can

only be characterized as base, false, cowardly, and contemptible, still he is trusted, upheld, supported, and declared to be both competent and upright in his position in the school and in his private life, by the faculty and student body of the institution, and by the majority of the people in his community, as he is informed and believes.

"Nevertheless, in order that even the appearance of evil may not be alleged by his ill wishers, and in order that his character shall be entirely vindicated in the sight of all men, he has demanded, and still does demand, a full, free, exhaustive, and complete investigation of every charge made against him, whether based on rumor, or other things. All that he asks for is a tribunal, clothed with the power to do so, which will give a definite statement of each and every particular offense with which he is charged; that will bring his accusers and their witnesses face to face with him and his witnesses, and which will give him a fair and impartial trial."

It is further insisted by the complainant:

". . . That the general assembly had no power to appoint said committee and to give it the powers attempted to be given, because opposed to the Constitution and laws of the State; because an attempt to give to a committee of the general assembly arbitrary, oppressive, inquisitorial, and judicial powers of a matter, the control and regulation of which belonged to another department of the government; because opposed to the Bill of Rights, and because of being an attempt to deprive complainant of his rights, property, franchise, and office without due process of law.

"Complainant further charges that the attempt of said individuals, the defendants above named, or any of them, claiming to be a committee as aforesaid, to organize them-

148 Tenn.—7

selves as such committee, and to bring complainant before them to answer any charges of any character whatever, or to proceed against him in any way, by the taking of testimony or otherwise, is an invasion of his rights which entitled him to come into a court of chancery and seek its injunctive relief against the exercise of illegal arbitrary oppressive power against and upon him as is here sought to be done."

Among other grounds urged against the constitutionality of the resolution is the following:

"Said so-called resolution was never signed by the governor, nor was it ever submitted to him for his signature, as is required by law. It has, therefore, never become operative, but is absolutely void and of no effect."

In the prayer of the bill it was asked: "That defendants, as a whole, and each of them, in whatever capacity they may assume to act, be enjoined from alleging or prosecuting any charges before themselves as a committee, or otherwise against complainant and particularly charges of immoral conduct as and while being the president of said normal school until the further orders of this court, and that upon final hearing the temporary injunction so granted shall be made perpetual."

A preliminary injunction, in line with the prayer of the bill above quoted, was issued by the chancellor on April 17, 1923, and was served on the defendants Willett, Candler, Wiseman, and Butler on the same day.

On April 18, 1923, the defendants above named filed in the cause the following motion:

"In this cause come the defendants John D. Wiseman, Charles L. Willett, H. M. Candler, and E. E. Butler, and waiving the jurisdictional fact that neither of them were

in Washington county, Tennessee, when the *fiat* for injunction was granted in this case, in so far as they have the legal right and authority to waive the same, come now and move the court to dissolve the injunction in this cause, on the ground that there is no equity in the face of the bill."

After hearing argument, the chancellor made an interlocutory decree on the 21st day of April, 1923, incorporating therein his opinion, by the terms of which he denied the defendant's motion and refused an appeal to this court sitting at Knoxville, "being of opinion that the case is not now appealable." · He allowed the defendants thirty days within which to answer the bill.

To review this action, the four defendants above named have filed the present petition for *certiorari* and for ancillary *supersedeas*. The petition was set down by the Chief Justice for argument before the court, and has been ably presented by briefs and by oral argument.

It is insisted for petitioners that the question involved is purely a political question, to-wit, the right of a lawfully constituted committee of the legislature to function, and that the courts are therefore without authority to interfere with this agency of a co-ordinate branch of the government. It is therefore claimed on the authority of *Clements et al.* v. *Roberts et al.,* 144 Tenn., 129, 230 S. W., 30, that the chancellor, in issuing an injunction, was acting illegally and in excess of his jurisdiction.

It is, of course, well settled that where the chancellor is acting illegally or in excess of his jurisdiction, this court may grant writs of *certiorari* and *supersedeas*. *State ex rel.* v. *Alexander,* 132 Tenn., 439, 450, 178 S. W., 1107.

And if it be true that this is a legally constituted legis-

lative committee, discharging its legal and constitutional functions, then the question would be, as claimed by petitioners, a purely political question of which the courts would have no jurisdiction. *Clements* v. *Roberts,* supra.

But if, on the other hand, the resolution under which the defendants are attempting to act is unconstitutional, illegal, and void, it needs no citation of authority to show that complainant has a right to seek, and a court of equity has the right to give him, protection, by means of an injunction.

Section 18, of article 3, of the Tennessee Constitution, among other things provides: Every joint resolution or order (except on questions of adjournment), shall likewise be presented to the governor for his signature, and before it shall take effect shall receive his signature; and on being disapproved by him shall, in like manner, be returned with his objections; and the same, before it shall take effect, shall be repassed by a majority of all the members elected to both houses, in the manner and according to the rules prescribed in case of a bill."

Construing this provision of the constitution, it was said in *Richardson* v. *Young,* 122 Tenn., 471, 531, 532, 125 S. W., 664, 678;

"That provision only concerns resolutions or orders, which are legislative in their character and does not relate to those in regard to mere matters of formal procedure, of which the Senate and House have exclusive control. There seems to be no conflict of authorities as to this."

Is the appointment of a committee of the legislature with extensive powers which, by the terms of the creating resolution, is not to function until after the final adjournment of the legislature, a "matter of formal procedure" within the holding of *Richardson* v. *Young,* supra?

This is a new question in this State, but similar questions have arisen in other States, and have been passed on by the courts of last resort. Many authorities from other jurisdictions are cited in the learned and comprehensive briefs of counsel. It is apparent that these have value only in so far as the constitution of the particular State may resemble the Tennessee Constitution, and they are, in any event, merely persuasive.

For the petitioners, the case of *Commercial & Farmers' Bank* v. *Worth* (1895), 117 N. C., 147, 23 S. E., 160, 30 L. R. A., 261, is stressed. It does not appear from the report of that case whether the resolution in question was signed by the governor, or whether such signature was necessary under the Constitution of North Carolina. The resolution in question provided that the committee should take evidence—"and make their report to the general assembly, if it is possible to do so, before its adjournment. . . . And, if not, then said report shall be made to the supreme court."

It was said in the opinion: "Nor can it be denied that the legislature has power to authorize a committee of its body to sit during vacation, and fix the compensation. The question before us does not turn upon the power of the legislature, which is undeniable, but upon the construction of their action. The uniform action of Congress and the legislature, so far as our researches extend, has been to expressly authorize such committee to 'sit in vacation.' "

The real question involved in the case was whether the members of the committee, sitting after adjournment, were entitled to compensation in the absence of provision therefor in the resolution. It was held they were not so entitled.

The court, as will be observed, merely assumes the truth of the proposition under investigation, without attempting to argue or reason out its conclusion, and the case is therefore of little value.

A case more nearly in point is *Dickinson, State Auditor, v. Johnson* (1915), 117 Ark., 582, 176 S. W., 116, L. R. A. (N. S.), 1915E, 497, Ann. Cas., 1916B, 1067.

In that case certain concurrent resolutions were passed by the legislature of Arkansas, and were duly enrolled and signed by the governor. These joint resolutions, in substance, appointed committees to investigate the state charitable institutions, take evidence, and make a final report to the governor. They were directed to continue their work until it was completed, and did continue their sittings after the legislature adjourned, incurring expenses for witnesses, expert accountants, stenographers, etc.

The complainant Johnson, on behalf of himself and all other taxpayers of the State, filed his bill to enjoin the State auditor from issuing, and the State treasurer from paying, any warrants for expenses incurred under these resolutions. The defendants filed a demurrer, which was overruled by the chancellor, and they appealed. The decree of the lower court was affirmed in a learned opinion by WOOD, J.

The first question considered was thus clearly stated by the court:

"Did the general assembly have power, by concurrent resolution, to continue its committees for the purposes expressed in the resolutions after the adjournment *sine die?*"

In discussing the nature of joint resolutions, the court points out that they are not, under the constitution of Arkansas, regarded as of the same dignity and importance as a bill.

Gilbreath v. Willett.

"The same solemnity and strictness is not required for the adoption of resolutions, as is to be observed in the passage of bills, except when the resolutions are disapproved by the governor. Constitution of Arkansas, article 6, section 16. Concurrent resolutions are necessary, but have the force and effect of law only within the limited sphere incident to work or legislation which the legslature may complete before its final adjournment."

It is further pointed out that the style of laws passed by the State of Arkansas under the constitution is: "Be it enacted by the general assembly of the State of Arkansas."

It is further provided by the constitution of that State, that: "No law shall be passed except by bill." Article 5, section 21.

And also: "Every bill shall be read at length on three different days in each house, unless the rules be suspended by two-thirds of the house, when the same may be read a second or third time on the same day; and no bill shall become a law unless on its final passage the vote be taken by yeas and nays, the names of the persons voting for and against the same be entered on the journal, and a majority of each house be recorded thereon as voting in its favor." Article 5, section 22.

The similarity of these provisions to the corresponding provisions of our constitution will be at once remarked.

Speaking of the case of *Tipton* v. *Parker*, 71 Ark., 193, 74 S. W., 298, the court further says:

"It was there distinctly ruled that the committee dies when the body creating it dies, unless the committee is continued by law. The court, by the language used in that case, did not mean to hold or indicate, even by indirection, that a committee of the legislature could be continued by

a concurrent resolution beyond the adjournment (*sine die*) of the legislature.

"While the writer" (says Judge Wood) "is the only member of the present court who participated in that decision, yet the majority of us concur in the view therein expressed, that to continue or appoint a committee whose work of investigation is to go beyond the session of the body which created it, requires the enactment of a law by bill passed in the manner prescribed by the constitution. The principle announced in *Tipton* v. *Parker,* supra, and here reiterated, is not only sound, but it is supported by the weight of authority in this country having constitutions similar to our own.  See *State ex rel. Peyton* v. *Cunningham,* 18 A. & E. Ann. Cas., 705, and authorities cited in note."

Distinguishing the line of authorities relied on by the petitioners in the present case, it was further said:

"In jurisdictions where the constitution expressly recognizes joint resolutions as equivalent to laws enacted by bill, such resolutions, when duly passed under the constitution, are given the force and effect of laws.  Such is the case under the constitution of the United States and some of the States.  As a fair illustration of this may be mentioned *Olds* v. *State Land Commissioner,* 134 Mich., 442, 86 N. W., 956, 96 N. W., 508.  There the constitution provides:

" 'Every bill and joint resolution shall be read three times in each house before the final passage thereof.  No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house.'

"Of course, under such constitutional provision a concurrent resolution, when constitutionally passed, becomes

a law the same as a law enacted by bill. But, as we have already observed, under a constitution like ours, a concurrent resolution duly passed is not a law, and cannot be used as a substitute for a bill. *Mullan* v. *State*, 114 Cal., 578, 578, 34 L. R. A., 262, 46 Pac., 670; *Collier & C. Lithographing Co.* v. *Henderson*, 18 Colo., 259, 32 Pac., 417; *Boyers* v. *Crane*, 1 W. Va., 176; *May* v. *Rice*, 91 Ind., 546. See, also, *Hiram B. Burritt* v. *State Contract Com'rs*, 120 Ill., 322, 11 N. E., 180."

While we are much impressed with its reasoning, the above case, as will be observed, goes further than it is necessary to go in the case at bar. We do not think it necessary to decide whether the legislature could, by anything short of an act duly passed, create a committee of this nature with power to function after the adjournment of the legislature *sine die.*

What we now decide is that the resolution under consideration, being legislative in its nature, is, by reason of the absence of the governor's signature, unconstitutional, null, and void, and affords no authority to those attempting to act under it.

The chancery court, therefore, had jurisdiction to issue the preliminary injunction restraining the proposed illegal action of the defendants, and the chancellor was authorized, in his discretion, to deny their motion to dissolve.

It results that the petition will be dismissed, at the cost of petitioners.