[S. F. No. 2442. In Bank.—September 18, 1900.]

THE PEOPLE ex rel. ATTORNEY GENERAL, Respondent, v. CHARLES F. CURRY, Secretary of State, Appellant.

PROPOSED. CONSTITUTIONAL AMENDMENT—CHANGE IN JUDICIAL SYSTEM—DUTY OF SECRETARY OF STATE—INJUNCTION.—It was the official duty of the secretary of state, at least twenty-five days prior to the last general election, to certify to the several county clerks of the state the proposed constitutional amendment No. 22 to article VI of the constitution, relating to a change in the judicial system, recommended at the last regular session of the legislature on March 18, 1899; and he cannot be enjoined from such certification at suit of the people. [Temple, J., and Harrison, J., dissenting.]

ID.—AMENDMENT PROPOSED AT SPECIAL SESSION.—Amendment No. 1 to the constitution, relating to a change in the judicial system, proposed at the special session of the legislature on February 10, 1900, was not effective, not having been included in the proclamation convening the legislature in that session, and that proposed amendment could not ·supersede the previous amendment No. 22, proposed at the regular session of the legislature in 1899.

ID.—LIMITATION OF POWER AT SPECIAL SESSION.—The legislature has no power to legislate on any subjects at a special session other than those specified in the proclamation convening it in extraordinary session. Although the proposing of a constitutional amendment is not ordinary legislation, yet it is the exercise of a legislative function, and cannot be lawfully done at a special session, if not specified in the governor's proclamation convening the legislature.

ID.—LAW FOR SUBMISSION OF CONSTITUTIONAL AMENDMENTS—REPEAL OF ACT OF 1883—UNCONSTITUTIONAL RE-ENACTMENT—TITLE.—In the act of 1899 repealing the act of 1883 to provide for the submission of proposed amendments to the constitution to a vote of the people, the section purporting to re-enact the first section of the act of 1883 is unconstitutional, as not being expressed in the title of the repealing act.

ID.—CONSTRUCTION OF POLITICAL CODE—TIME FOR SUBMISSION OF PROPOSED AMENDMENT.—The amendments of 1899 to sections 1195 and 1197 of the Political Code, providing for the certification of a proposed amendment of the constitution by the secretary of state to the clerk of each county in the state "not less than twenty-five days before election," and providing for the printing of the question of adopting or rejecting the amendment upon the ballots, are to be construed as providing for the submission of the proposed amendment at the next general election after the proposal of the amendment. [Temple, J., and Harrison, J., dissenting.]

ID.—REASONABLE INTERPRETATION OF STATUTES—PRESUMPTION.—The interpretation of statutes must be reasonable, and lean strongly to avoid absurd consequences and even great inconvenience; and it is to be presumed that the legislature intended to impart to its enactments such a meaning as would render them operative and effective.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. F. H. Dunne, Judge.

The facts are stated in the opinion of the court.

Tirey L. Ford, Attorney General, George A. Sturtevant, Deputy Attorney General, and William M. Abbott, Deputy Attorney General, for Appellant.

The legislature, when lawfully convened, whether by virtue of the provisions of the constitution or by the governor's proclamation, can, when not restricted by constitutional provision, do anything at any extra session that it might at a regular session. (*Morford v. Unger*, 8 Iowa, 82; *McAffee v.*

*Russell*, 29 Miss. 84.)   The proposing of a constitutional amend-
ment is not "to legislate," within the meaning of section 9 of
article V of the constitution, limiting the power "to legislate
on any subjects other than those specified in the proclamation."
The ordinary meaning of "to legislate" is to enact a law or
laws.   The rule is that we must presume that the words have
been employed in their natural and ordinary meaning, unless
we find technical words or words of science or art employed.
(*Oakland Pav. Co. v. Hilton*, 69 Cal. 479-91; *Weill v. Kenfield*,
54 Cal. 113; *Green v. Weller*, 32 Miss. 650.)   The mere proposal
of a constitutional amendment is not an act of legislative
power.   (James on Construction of Constitution, secs. 574-79;
*People v. Blanding*, 63 Cal. 338; *Hatch v. Stoneman*, 66 Cal.
633-38; *Oakland Pav. Co. v. Hilton, supra; Livermore v. Waite*,
102 Cal. 113-18; *Mullan v. State*, 114 Cal. 578, 585; *Hollings-
worth v. Virginia*, 3 Dall. 378; *In re Senate Bill 31*, 25 Neb.
372; *State v. Mason*, 43 La. Ann. 590; *State v. Dahl*, 6 N. Dak.
81; *Nesbit v. People*, 19 Colo. 441-47; *State v. Cox*, 8 Ark. 436-
44; *Hays v. Hays* (Idaho), 47 Pac. Rep. 732, 733; *Julius v.
Callahan*, 63 Minn. 154.)   The repealing act of 1883 never
passed the legislature, and is void *in toto*, and the act of 1883
is still in force.   Reference to the journals may be made to
show this fact.   (*Weill v. Kenfield, supra; People v. Thompson*,
67 Cal. 627; *Railroad Tax Cases*, 8 Saw. 293; 13 Fed. Rep.
724; *Spangler v. Jacoby*, 14 Ill. 297[1]; *Field v. Clark*, 143 U. S.
649, note.)   The fact that the repealing bill approved by the
governor is radically different from that actually passed by
both houses is fatal to the validity of the entire act.   (*Prescott
v. Trustees*, 19 Ill. 324; *Moog v. Randolph*, 77 Ala. 597; *Smithee
v. Campbell*, 41 Ark. 471; *Brady v. West*, 50 Wis. 68; *Union
Bank v. Commissioners of Oxford*, 119 N. C. 214; *Commissioners
of Stanly County v. Snuggs*, 121 N. Y. 394; *Cohn v. Kingsley*
(Idaho), 38 L. R. Ann. 74; *Brown v. Collister* (Idaho), 51 Pac.
Rep. 417; *Ritchie v. Richards*, 14 Utah, 345; *In re New York etc.
Bridge Co.*, 148 N. Y. 540; *Rode v. Phelps*, 80 Mich. 598; *State
v. Wendler*, 94 Wis. 378.)

Anderson & Anderson, *Amici Curiae.*

---

[1] 53 Am. Dec. 571.

There is no law authorizing the submission of either of the proposed constitutional amendments to the people.   Such submission requires a regularly enacted law in force for that specific purpose.   (*Hatch v. Stoneman,* 66 Cal. 632, 634.)   The act of 1883 is lawfully repealed, and the re-enactment of section 1 thereof in the repealing law is invalid, not being covered by the title. (Const., art. IV, sec. 24.)   The Political Code, as amended in 1899, does not fix any time or specify any election at which a proposed amendment is to be submitted.   (Pol. Code, secs. 1195, 1197.)   The legislature does not provide, in either of these sections, that any proposed amendment shall be submitted, nor specify any time or election when they shall be submitted.   Each only provides a portion of the machinery to be used when the legislature shall require it to be put in motion, which it has not done.   There can be no valid amendment without a strict compliance with the constitutional requirement that "it shall be the duty of the legislature [i. e., the senate, assembly, and governor] to submit such proposed amendment or amendments to the people." (*Livermore v. Waite,* 102 Cal. 117, 118; 6 Am. & Eng. Ency. of Law, 2d ed., 904-06; *State v. Tooker,* 15 Mont. 8; *Nesbit v. People,* 19 Colo. 441; *Wells v. Bain,* 75 Pa. St. 39[2]; *State v. Swift,* 69 Ind. 518, 519; *Edwards v. Lesueur,* 132 Mo. 410; *Koehler v. Hill,* 60 Iowa, 550; *Collier v. Frierson,* 24 Ala. 108.)   The addition of matter in an enrolled bill which was not enacted, if distinguishable from the rest, does not affect the validity of the part enacted; and if the re-enacting section, which is inconsistent with the title of the repealing act, was not in fact passed, it does not affect the validity of the distinct and substantial repeal, which was the avowed object of the repealing act, and did pass the legislature.   (25 Am. & Eng. Ency. of Law, 186; *Berry v. Baltimore etc. Ry. Co.,* 41 Md. 446[3] : *State v. Deal,* 24 Fla. 293[4]; *State v. Platt,* 2 S. C. 150.[5])

Thomas D. Riordan, and Edward Lande, for Respondent.

The secretary of state has an official, ministerial, and imperative duty resting upon him to comply with section 1195 of

[2] 15 Am. St. Rep. 563.          [4] 12 Am. St. Rep. 204.
[3] 20 Am. Rep. 69.               [5] 16 Am. Rep. 647.

the Political Code, as to the constitutional amendment No. 22, regularly proposed by the last legislature; and he cannot be restrained from performing that imperative duty in a matter of public interest. (Throop on Public Offices, sec. 547; *Phelps v. Hawley*, 52 N. Y. 27; *Martin v. Mayor, etc.*, 1 Hill, 545; Mechem on Public Offices and Officers, secs. 21, 523; *State v. Buchanan*, 24 W. Va. 373.) It must be presumed that the legislature intended to make that section of the code effective. (Black on Interpretation of Laws, 112, and cases cited.) The interpretation of laws should lean strongly to avoid absurd consequences, injustice, and even great inconveniences, for the legislative meaning is to be carried out, and it cannot be supposed to be any of these. (Bishop on Written Laws, c. IX.) Section 1195 of the Political Code, construed in connection with the statute of 1883, repealed when it was passed, and in connection with sections 1041 and 1043 of the same code, plainly contemplates the submission of a proposed constitutional amendment at the next general election after its proposal by the legislature.

VAN DYKE, J.—This is an action brought to restrain the defendant, as secretary of state, from certifying to the county clerks of the several counties of the state the proposed senate constitutional amendment No. 22, adopted at the regular session of the legislature, March 18, 1899. A general demurrer was filed to the complaint, which was sustained by the court below, and, the plaintiff declining to amend, judgment was entered for the defendant; and this appeal is taken from said judgment.

It is alleged in the complaint that, in addition to the duties prescribed in the constitution of the state of California, it is by law made the duty of the secretary of state to certify all proposed amendments to the constitution to the county clerk of each county, and the clerk of each county thereafter to include the same in the preparation, arrangement, and printing of ballots, and the performance of other acts, as provided by law, for the purpose of submitting the same to the qualified electors of the state for the popular vote. That the performance of such duties by the secretary of state involves and makes

necessary the expenditure of large sums of money, payable from the funds in the hands of the treasurer of said state, derived from taxation; and that at the thirty-third regular session of the legislature, commencing January 2, 1899, and on March 18, 1899, there was duly and legally adopted, two-thirds of all the members elected to each house of the legislature voting in favor thereof, a joint resolution proposing to the people of the state of California an amendment to the constitution, by amending sections 1, 2, 3, 4, 10, 12, 14, 16, 17, 18, 21, 23, and 24, of article VI thereof relating to the judiciary and establishing courts of appeal, which said joint resolution is known as senate constitutional amendment No. 22, a copy of which is attached to the complaint and made a part thereof. The complaint further states that at the extraordinary session of the legislature of the state of California, commencing on the twenty-ninth day of January, 1900, and on the tenth day of February, there was duly and regularly adopted, two-thirds of all the members elected to each of said houses of the legislature voting in favor thereof, a joint resolution proposing to the people of this state an amendment to the constitution of said state, by amending article VI thereof relating to the judiciary and establishing courts of appeal, which said joint resolution is known as senate constitutional amendment No. 1, a copy of which is attached to the complaint and made part thereof. It is further alleged that said senate constitutional amendment No. 1, adopted by the legislature at its extraordinary session, was intended to, and does in fact, supersede and render null and void senate constitutional amendment No. 22, adopted by the legislature at its thirty-third regular session, to wit, on March 18, 1899. That, notwithstanding such fact, the said defendant, as secretary of state, proposes and intends, unless restrained, to certify to each of the county clerks of the several counties of the state the proposed constitutional amendment designated as senate constitutional amendment No. 22, and that the carrying out of such threatened acts by defendant will take from the funds of the state of California, and from the respective counties thereof, derived from the taxation of the people and of the tax bearers, money without any authority of law and for an unlaw-

ful purpose. Wherefore, it is prayed that the said defendant, the secretary of state, be restrained and enjoined from in anywise certifying to the county clerks of the respective counties the proposed said senate constitutional amendment No. 22, or from the preparation, arrangement, printing, or distribution of any ballots, or the performance of any act whatever, for submission to the qualified electors for popular vote, of the said proposed constitutional amendment.

In the brief of the attorney general, on behalf of the appellant, it is contended that the defendant, as secretary of state, should not certify constitutional amendment No. 22, adopted at the regular session in 1899, but that he should certify senate constitutional amendment No. 1, adopted by the legislature at its extraordinary session in February, 1900. This contention is based upon the claim that the legislature in extraordinary session has the power to propose to the qualified electors of the state amendments to the constitution, even though the question of proposing amendments was not mentioned or specified in the proclamation of the governor convening the said legislature. It is conceded by the attorney general that the governor's proclamation omitted entirely to mention the subject of proposing constitutional amendments; and it is also conceded to be the duty of the defendant to certify proposed amendments to the constitution to the county clerks, but the question to be determined is, which of the proposed amendments to the judiciary article should be certified; appellant contends, as already stated, that the one proposed at the extra session should be certified, and not the one proposed at the regular session.

By the constitution the sessions of the legislature shall commence on the first Monday after the first day of January next succeeding the election of its members, and shall be biennial, "unless the governor shall in the interim convene the legislature by proclamation." (Const., art. IV, sec. 2.) The constitution, under the article in reference to the executive department, in defining the duties of the governor, provides that "he may, on extraordinary occasions, convene the legislature by proclamation, stating the purposes for which he has con-

vened it; and when so convened it shall have no power to legislate on any subjects other than those specified in the proclamation, but may provide for the expenses of the session and other matters incidental thereto." (Const., art. V, sec. 9.)

The attorney general contends that proposing constitutional amendments is not "to legislate on any subjects other than those specified in the proclamation," and, therefore, does not fall within this provision of the constitution.

It may be admitted that proposing constitutional amendments is not legislation in the sense of passing statutory laws, but it is nevertheless performing a legislative function. It is one of the modes pointed out to initiate the enactment of constitutional law. The performance of such a duty is neither executive or judicial, but purely legislative. No one would contend that the senate and assembly could propose constitutional amendments, except at the session of the legislature and while it is in session, and not before or afterward—that is, both houses in session, which constitute the legislature. The resolution to the proposed amendment follows the usual form in such cases, and reads: "The legislature of the state of California, . . . . two-thirds of all the members elected to each house of said legislature voting in favor thereof, hereby proposes," etc. The provision in reference to proposing constitutional amendments is something similar to that in reference to the approval or ratification of city charters framed by freeholders. "Such approval may be made by concurrent resolution, and, if approved by a majority vote of the members elected to each house, it shall become the charter of such city," etc. (Const., art. XI, sec. 8.)

The governor takes no part in the adoption of freeholders' charters, any more than in proposing constitutional amendments; yet the adoption of a city charter in the mode provided is legislation, although not in the same manner as passing bills; it creates, or participates in creating, a municipal government which can only be done by legislative power. It will hardly be contended that the action of the two houses of the legislature in approving or adopting a freeholders' charter can be done at an extra session, when that subject is not specified in the governor's proclamation. *People v. Blanding,* 63 Cal.

333, does not sustain the contention of the appellant. That was a case of the confirmation by the senate of an appointee of the governor. And it is said that the provision in the constitution in reference to legislation other than that specified in the proclamation does not apply in such a case, that being the independent action of the senate and not in the nature of legislation at all. It frequently occurs that the senate of the United States is convened, without calling together Congress, for the purpose of confirming presidential appointments. Particularly is this the case on the coming in of a new administration. The other cases referred to by the attorney general, such as *Hatch v. Stoneman,* 66 Cal. 633, and *Mullan v. State,* 114 Cal. 578, simply hold that the proposal of amendments to the constitution is not made by the legislature as in the ordinary enactment of a law.

The evident purpose of the restriction placed upon the action of the legislature when called together in extraordinary session by proclamation was to regulate the duration of such session, and thus diminish expenses, and the court should not, by a strained or strict construction, defeat these purposes. We are therefore, of the opinion, for the reasons stated, that the proposed constitutional amendment proposed at the extra session of the legislature of 1900 is invalid, and that the defendant, as secretary of state, is justified in certifying the amendment proposed at the regular session of 1899, in lieu thereof.

This disposes of the questions raised by the attorney general on the appeal adversely to the appellant. The case, however, being one of great public importance, permission was given to certain attorneys to file a brief as *amici curiae,* which has been done, and a reply brief thereto has been filed on the part of the respondent. In the brief filed by the *amici curiae* it is contended that there is now no law whatever for the submission of constitutional amendments, and in support of this contention they refer to the act of 1899 repealing the act of 1883, under which constitutional amendments have been previously submitted to a popular vote. (Stats. 1899, p. 24.) The title of the repealing act is as follows: "An act to repeal an act entitled 'An act to provide for the submission of proposed amendments to the constitution of the state of California to the qualified

electors for their approval,' approved March 7, 1883, relating to the manner of publishing such proposed amendments."

Following this title, the first section of the act reads: "An act to provide for the submission of proposed amendments to the constitution of the state of California to the qualified electors for their approval, adopted March 7, 1883, is hereby repealed."

Then follows another section 1, in the same statute, which purports to re-enact substantially the first section of the act of 1883, which, it will be seen, the first section 1 had already repealed. Counsel state in their brief that, aside from the fact that the second section is not covered by the title, it was never enacted by the legislature, "and finds a place in the printed statutes as a part of the act in question solely by reason of some engrossing clerk's blunder," referring to certain pages of the senate and assembly journals to support this contention.

According to the view we take of this branch of the case it is unnecessary, however, to consult the legislative journals, inasmuch as the subject matter embraced in the so-called second section 1 is not that expressed in the title of the act. "If any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title." (Const., art. IV, sec. 84.) This eliminates the second section 1 from the act in question, and it stands, therefore, simply as an act repealing the former act of 1883. The act of 1883, so repealed, reads as follows: "Whenever the legislature shall propose any amendment or amendments to the constitution of this state, which amendment shall have been passed in the manner and form required by section 1 of article XVIII of the constitution, and no other mode is provided by law for the submission of such amendment or amendments to the people for their approval, it shall be the duty of the governor to advertise such proposed amendment or amendments in at least four newspapers of general circulation in this state for three months next preceding the next general election. One of said newspapers must be published at the city of Sacramento and two at the city of San Francisco; and in issuing his proclamation for an election at which any amendment or amendments to the constitution are

to be voted upon, he shall include such amendment or amendments therein, and he shall designate them by number in the order in which they have been proposed."

Bearing the same date as the repealing act in question, the legislature passed the following amendment to the Political Code (Stats. 1899, p. 72):

"Section 1. Section 1195 of the Political Code is amended to read as follows:

"1195. Whenever the legislature shall propose any amendment to the constitution of this state, which amendment shall have been passed in the manner required by section 1 of article XVIII of the constitution, or whenever said legislature shall submit any proposition to a vote of the qualified electors of the state, the secretary of state shall duly, and not less than twenty-five days before election, certify the same to the clerk of each county of the state; shall cause to be printed at the state printing-office, in convenient form, one and one-half times as many copies of such amendment or proposition as there are registered voters in the state; and at least thirty days before any election at which such amendment or proposition is to be voted on, shall furnish each county clerk in the state with one and one-half times as many copies as there are registered voters in his county. The clerk of each county shall thereafter cause to be mailed to each voter a copy of said constitutional amendment or other proposition at the same time and at the same manner, and in the same envelope, provided for in section 1194 of this code, and no other publication thereof shall be necessary or authorized."

And at the same session passed an act amending section 1197 of the Political Code, in reference to the form of ballots, by adding thereto the following: "Whenever any question or constitutional amendment is to be submitted to the vote of the people, there shall be printed another column or columns, with voting squares at the right of the last or blank column in which such question or constitutional amendment shall be printed, and opposite such question or constitutional amendment to be voted on, in separate lines the words 'Yes' or 'No' shall be printed. If the elector shall have stamped a cross (X) in the voting square after the printed word 'Yes,' his vote shall be

deemed to be in favor of the adoption of the question or constitutional amendment; if he shall have stamped a cross (X) after the printed word 'No,' he shall be deemed to be against the adoption of the same."

It is further contended by the *amici curiae* that the amendment to the Political Code did not specify the time or the election at which proposed amendments shall be submitted, that it only relates to the publication of such amendment. But the same may be said of the act of 1883; that did not provide at what election nor at what time the proposed amendment should be submitted. It simply directed the governor to advertise such proposed amendment or amendments in at least four newspapers of general circulation in this state for three months next preceding the next general election, and to include the same in his proclamation. By the amendment to the code in question whenever the legislature shall propose an amendment the secretary of state shall, not less than twenty-five days before election, certify the same to the clerk of each county of the state, and have printed in convenient form the copies mentioned, and at least thirty days before any election at which such amendment is to be voted on shall furnish each county clerk in the state with the copies therein mentioned.

The act of 1883, however, notwithstanding its defects in the respects mentioned, has been considered sufficient to authorize the submission of proposed constitutional amendments to a vote of the people. Not less than sixteen different amendments to the constitution have been submitted under the act of 1883, and by the people ratified. This court has repeatedly recognized the validity of these amendments as forming a part of the constitution. (*People v. Strother*, 67 Cal. 624; *Martin v. Election Commrs.*, 126 Cal. 410.) It is significant that the amendment to section 1195 of the Political Code was passed the same day as the act repealing the act of 1883—the substantial difference between the act of 1883 and the amendment to the code being only in regard to publication.

It can be fairly implied that when the law directs the secretary of state to provide copies of the proposed amendments so many days before election, it means the next general election after they have been so proposed.

At the regular session of 1899 seven separate amendments were proposed by the legislature. Among the number are some of very great public importance. The one under consideration is intended to relieve the congested condition of the supreme court so as to expedite the disposal of causes on appeal. Another is to empower the legislature to pass a primary election law, special in character, if deemed advisable. It would be a violent presumption to suppose that the legislature, which by a two-thirds vote in each house had just proposed such important amendments to the constitution, should deliberately repeal the only act under which such amendments could be submitted to the voters, without providing some other mode for accomplishing the same purpose.

"There must be held throughout the state on the first Tuesday after the first Monday of November . . . . in every second year . . . . an election to be known as the general election." (Pol. Code, sec. 1041.)

"Special elections are such as are held to supply vacancies in any office, and are held at such times as may be designated by the proper board or officer." (Pol. Code, sec. 1043.)

"Special elections are held in counties for the purpose of filling vacancies in office.". (Act Concerning Special Elections, passed February 9, 1878, Stats. 1877-78, p. 73.)

The election referred to in the amended code cannot, therefore, be a special election, but must be a general election. And, taking into consideration the various provisions of law on the subject, the word "election" mentioned in connection with the duties imposed upon the secretary of state and the various county clerks in the preparation and distribution of the proposed amendments can mean only the next general biennial state election. (Civ. Code, sec. 3538.)

"It is presumed that the legislature intended to impart to its enactments such a meaning as would render them operative and effective." (Black on Interpretation of Laws, 112, and cases cited.) "Interpretation must be reasonable." (Civ. Code, sec. 3542.)

The interpretation should lean strongly to avoid absurd consequences, and even great inconvenience; for the legislative meaning is to be carried out, and it cannot be supposed to be

any of these. Great public interests will not needlessly be put at hazard by the interpretation. (Bishop's Written Laws, c. 19.)

Judgment affirmed.

McFarland, J., Garoutte, J., Henshaw, J., and Beatty, C. J., concurred.

TEMPLE, J., dissenting.—I dissent. As to the mode of submitting proposed amendments to the constitution, the constitution provides: "It shall be the duty of the legislature to submit such proposed amendment or amendments to the people in such manner, and at such time, and after such publication, as may be deemed expedient."

In my opinion the legislature has not directed at what time the proposed amendments shall be submitted to the people, and, in the absence of such direction, they cannot legally be submitted. The legislature, when it convenes, could and should provide for a referendum, and, should it do so, the vote upon such submission would control, and a vote at the coming election, in the present condition of the law, would count for nothing.

The main, if not the only, argument to the contrary is that the law of 1883 did not expressly provide a time for the submission of such amendments, and yet several amendments have been adopted under it, the validity of which has not been questioned on that ground. Since no question of that kind has ever been raised or considered by this or any court, the argument at best is but a weak one. But there is no basis for the argument. The law of 1883 did, by clear and unmistakable implication, provide that the amendment should be voted upon at the next general election. This appears from the language of the act, as set out in the principal opinion. The section of the Political Code referred to contains no equivalent provision. It is but a section in the title concerning elections, and which provides rules and regulations as to all elections whenever they shall occur. There are over three hundred sections in the title, all of this character. It is part of the procedure prescribed for conducting elections, and comes into action whenever an election is provided for. Instead of requiring the publication three months, or for any fixed time before the next general

election after the amendments have been proposed, it merely directs the publication at least "thirty days before any election at which such amendment or proposition is to be voted on"— clearly in itself implying that the time for submitting the amendment is to be otherwise fixed.

The practice has not been uniform to submit constitutional amendments at a general election. In 1887 such proposed amendments were submitted at a special election.

Harrison, J., concurred in the dissenting opinion.

Rehearing denied.