[S. F. No. 16035.   In Bank.—May 6, 1939.]

RALPH E. SWING, as Chairman of the Senate Interim Com-
mittee, etc., et al., Petitioners, v. HARRY B. RILEY, as
State Controller, etc., Respondent.

514

Fred B. Wood, George W. Wakefield, Arthur McHenry and Norris J. Burke for Petitioners.

Ralph E. Swing, W. P. Rich, T. H. DeLap, Thomas F. Keating, A. L. Pierovich, Irwin T. Quinn, Bradford S. Crittenden, Andrew R. Schottky, Earl S. Desmond, John H. O'Donnell, Charles W. Lyon, Walter McGovern, Paul Peek, Edgar C. Leavey, Ben Rosenthal, Gerald C. Kepple and Edward H. Law, as *Amici Curiae*, on Behalf of Petitioners.

U. S. Webb, Attorney-General, and Robert W. Harrison, Deputy Attorney-General, for Respondent.

George W. Rochester, Harry P. Bowman and William B. Bierne, as *Amici Curiae*, on Behalf of Respondents.

THE COURT.—This proceeding is companion to the matter of the *Special Assembly Interim Committee* v. *Southard*, L. A. No. 16753. A rehearing was granted herein for the reason set forth in the opinion filed this day (*ante*, p. 497 [90 Pac. (2d) 304]), in that matter. For the reasons stated therein the opinion of this court on the former hearing is adopted as the opinion of the court on rehearing, as follows:

"The present petition . . . involves several additional points not involved in L. A. No. 16753.

"The state senate at its fifty-second session, just prior to the adjournment of that session *sine die* on May 28, 1937, duly passed a single house resolution reciting the need for regulation of the manufacture, sale and disposition of alcoholic beverages 'in the interest of the moral, social and economic welfare of the people and in the interest of the temperate use of such beverages', and the helpfulness of a 'study of the problems relating to such matters . . . in the drafting

of legislation and rules and regulations designed to accomplish such purposes', and creating a committee of five of its members with power and authority 'to make a full, complete study and investigation of all matters relating to the manufacture, sale and disposition of alcoholic beverages within this state . . . in relation to the issuance of licenses and the enforcement of laws, rules and regulations concerning such business'. The committee was given full power to subpoena witnesses and to compel the giving of testimony. It was given leave 'to sit during the sessions of the senate, and/or during recess and at such times and at such place or places as the committee may determine' and was directed to 'report to the Senate at the next regular session of the Legislature its findings and recommendations . . . ' The resolution also provided that 'the sum of $2000 . . . is hereby set aside and made available for the purpose of defraying the expenses of such committee and the members thereof, other than that required by law to be paid from the legislative help fund. Said sum to be paid from the contingent fund of the Senate and the State Controller is hereby authorized and directed to draw his warrants in favor of the person or persons entitled thereto for such expenditures as may be certified to him from time to time by the chairman of said committee, and the State Treasurer is hereby authorized and directed to pay the same.'

"Thereafter the committee was duly selected and petitioner Swing was appointed chairman thereof. Thereafter the committee proceeded to meet for the purpose of performing the functions delegated to it.

"In January of 1938, the governor, pursuant to the powers conferred upon him by article V, section 9, of the Constitution, called a special session of the legislature. It is conceded that in the proclamation calling the special session there was no mention of legislative committees generally, nor of the committee here involved specifically. The proclamation was likewise silent as to the subject-matter delegated to this committee for study and report. At this special session the legislature by concurrent resolution passed assembly concurrent resolution 18 (chap. 27 of Resolutions, Extra Session, 1938). This resolution should be quoted in full. It provides:

" 'WHEREAS, Several interim committees have been established by single house and concurrent resolutions; and

" 'WHEREAS, It is desired to supplement and affirm such

single house and concurrent resolutions; now, therefore, be it

" 'Resolved by the Assembly of the State of California, the Senate thereof concurring, That all Assembly and Senate single house and concurrent resolutions heretofore passed at the regular session of the Fifty-second Legislature and heretofore and hereafter passed at the first extra session of the Fifty-second Legislature, are hereby validated, affirmed and authorized, and the committees established and to be established thereunder are hereby authorized to exercise all the powers and perform all the duties vested in them and imposed upon them by the particular resolution under which the committee or committees are established.'

"Prior to the adoption of this concurrent resolution certain incidental expenses were incurred by the committee. Other expenses were incurred after the adoption of the concurrent resolution. The chairman of the committee duly certified these expenditures to the respondent controller. The controller refused to draw warrants for the claims on the grounds that 'interim committees cannot be established by single house resolution with power to function after the adjournment of the Legislature', and that the concurrent resolution was also ineffectual as a valid authorization for the creation of the committee. Petitioners thereupon brought this proceeding in mandamus to compel the issuance of the warrants.

"In so far as the petition involves the question as to whether either house of the legislature by single house resolution may lawfully create a fact finding interim-committee with authority to function after adjournment of the legislature sine die, that question need not be discussed in this opinion. The identical question was answered in the negative in L. A. No. 16753 (ante, p. 497 [90 Pac. (2d) 304]), this day decided. For the reasons therein stated, and upon the authority of that case, it must be held that the senate resolution of May 28, 1937, was legally insufficient to authorize the committee to incur the expenditures here involved.

"Petitioners contend that, even if it be held that the assembly cannot lawfully create committees with authority to sit after adjournment, for the reason that the assembly is not a continuing body because all of its members are elected each two years, such rule has no application to the senate where only one-half of the membership is elected every two

years. It is contended that for this reason the senate must be held to be a continuing body, with power to appoint its committees with authority to sit after adjournment. In this connection petitioners rely on *McGrain* v. *Daugherty,* 273 U. S. 135 [47 Sup. Ct. 319, 71 L. Ed. 580, 50 A. L. R. 1].

██ "To this contention there are two answers. In the first place the legal basis of the rule holding that a single house resolution is ineffectual to authorize a committee to function after adjournment is that upon adjournment *sine die* all legislative power of both houses terminates, including the auxiliary power of functioning through legislative committees. In the second place, even if we were inclined to follow the holding of the Daugherty case, *supra,* the rule of that case would not be applicable here. As was pointed out in the assembly committee case, L. A. No. 16753 (*ante,* p. 497 [90 Pac. (2d) 304]), in the Daugherty case the United States Supreme Court held that senate interim committees could lawfully sit after adjournment for the reason that the senate is a continuing body, two-thirds of its membership at each new session of congress consisting of holdover senators. The United States Supreme Court intimated that this rule probably did not apply to the house of representatives whose entire membership is elected anew each two years. Apparently the theory of the Daugherty case is that a senate interim committee when it reports back to the senate will be reporting back to a body whose membership consists of at least two-thirds of the members that originally appointed the committee. ██ The California senate cannot be held to be a continuing body under any such theory. Article IV, section 8, of the Constitution provides that 'A majority of each house shall constitute a quorum to do business . . . ' As already pointed out fifty per cent of the senators are elected anew each two years. It follows that since fifty per cent of the senate membership at each regular session is newly elected, there is not present a "majority" of the membership of the body that originally appointed the committee.

██ "Petitioners next rely on the concurrent resolution passed at the special session, purporting to validate, affirm and authorize the prior action of the senate in creating the committee here involved. This resolution, in our opinion, was ineffectual for the purpose for which it was passed.

"If it be assumed that by concurrent resolution the legislature could validly create an interim fact finding committee

with power to sit after adjournment *sine die* (and could therefore validate by subsequent resolution a committee improperly appointed in the first instance) we have grave doubts that such a concurrent resolution could be constitutionally passed at a special session when the subject-matter contained in the resolution is not mentioned in the governor's proclamation calling the special session. Article V, section 9, of the Constitution provides that the legislature at special session 'shall have no power to legislate on any subjects other than those specified in the proclamation . . . '. This constitutes a prohibition against exercising legislative powers at a special session except in considering matters included within the call. The work of legislative committees is subsidiary and auxiliary to the legislative functions of each house. If the legislature cannot directly legislate on matters not included within the call, then it cannot exercise dependent or subsidiary powers derived solely from the direct power to legislate. This problem was exhaustively considered and discussed in *Ex parte Wolters,* 64 Tex. Cr. R. 238 [144 S. W. 531, 535, Ann. Cas. 1916B, 1071], where it was held that the legislative power to create legislative committees by single house or concurrent resolution at a special session was necessarily limited to the creation of committees to consider legislation within the governor's call. (See, also, *Gilbreath* v. *Willett,* 148 Tenn. 92 [251 S. W. 910, 28 A. L. R. 1147].) In *People* v. *Curry,* 130 Cal. 82 [62 Pac. 516], it was held that the legislature in special session by concurrent resolution had no power to propose a constitutional amendment on a subject not included within the governor's call. The court pointed out that (p. 89) : 'It may be admitted that proposing constitutional amendments is not legislation . . . but it is nevertheless performing a legislative function.' The same reasoning is applicable to the appointment of legislative committees.

''Another and complete answer to this contention is that we are of the opinion that under our Constitution the legislature has no power by concurrent resolution to create a committee with power to sit after adjournment *sine die.* As far as the question of power is concerned there is no difference in this regard between a single house and a concurrent resolution. It is true that on this subject there is a conflict of authority. The cases both ways are noted in the assembly committee case, L. A. No. 16753 (*ante,* p. 497 [90

Pac. (2d) 304]). As was pointed out in the assembly committee opinion, several of the cases holding that by a concurrent resolution the legislature may validly create an interim committee, are in fact not authority for that holding, for the reason that in the particular jurisdiction there is no legal distinction between a concurrent resolution and a statute, both requiring the governor's signature. The reasoning of the several cases holding that a concurrent resolution is ineffectual to validly create such a committee seems to us to be unanswerable. If such a committee cannot lawfully be created by single house resolution (and on this point all state courts agree) it cannot be created by concurrent resolution. Every argument fully set forth in the assembly committee case, L. A. No. 16753 (*ante,* p. 497 [90 Pac. (2d) 304]) is equally applicable here. Legislative powers of the legislature cease upon adjournment *sine die.* Such powers cannot be continued after adjournment by either single house or concurrent resolution. The power to investigate by committees is subsidiary to the legislative power. When the main power ceases, the auxiliary power dies with it. If such committee or commission is to function lawfully after adjournment it can be created only by statute.

■ "Petitioners' last argument is that if a statute is required to validly create such a committee, such a statute was in fact passed in reference to the committee here involved. In this connection petitioners rely on two statutes. The first of these is the 1935 Budget Act (Stats. 1935, chap. 341, p. 1176) which provides in part as follows:

" 'Item 3. For contingent expenses of Senate for fifty-second session and interim committees thereof, twenty thousand dollars.'

"The second statute relied upon is the Appropriation Act of 1937 (Stats. 1937, chap. 23, p. 91) which provides in part as follows:

" 'SECTION 1. The sum of twenty thousand dollars is hereby appropriated out of any money in the State treasury, not otherwise appropriated, for contingent expenses of the Senate, for fifty-second session and interim committees thereof to be expended for such purposes and in such manner as the Senate shall by resolution direct. This appropriation shall be available without regard to fiscal years.

" 'Sec. 2. Inasmuch as this act provides an appropriation for the usual current expenses of the State, it is hereby de-

clared an urgency measure and shall, under the provisions of article IV, section 2, of the Constitution, take effect immediately.'

"In their opening brief petitioners contend that these statutes constitute 'statutory recognition and validation of the instant committee'. (Pet. Op. Brief, p. 29.) In their closing brief petitioners concede that the statutes cannot be considered 'technically' as validating statutes, because they were passed before the committee was created. (Pet. Reply Brief, p. 74.)

"It is quite clear that these statutes in no way constitute a statutory recognition of interim committees generally, or of the committee here involved specifically. The provisions for expenses contained in these statutes obviously contemplated the creation of valid and legal interim committees. It cannot logically be argued that in passing these statutes (one over two years, the other over two months, *before* the committee here involved was created) the legislature had in mind that interim committees would thereafter be unlawfully created by resolution, and that this was an attempt to 'validate' or 'authorize' them in advance. The statutes are of no legal significance in this case.

"The other points involved have all been discussed in the assembly committee case, L. A. No. 16753 (*ante,* p. 497 [90 Pac. (2d) 304]), and need not be discussed in this opinion."

For the foregoing reasons the alternative writ of mandate heretofore issued is discharged, and the application for a peremptory writ is denied.

LANGDON, J., Dissenting.—I dissent.

My views and conclusions on the issues involved herein are set forth in a dissenting opinion, this day filed (*ante,* p. 497 [90 Pac. (2d) 304]), in the proceeding entitled *Special Assembly Interim Committee* v. *Southard,* L. A. No. 16753.

SEAWELL, J., Dissenting.—I dissent for the reasons expressed by me in the companion case of *Special Assembly Interim* v. *Southard,* L. A. No. 16753, this day filed (*ante,* p. 497 [90 Pac. (2d) 304].)