In the Matter of Petition of the
**FINANCE COMMITTEE**
**OF THE LEGISLATURE OF THE VIRGIN ISLANDS**
to compel
**PERCY DE JONGH, Commissioner of Finance,**
to appear and present documents

Misc. No. 30-1956
District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

September 4, 1956

*Same case on appeal, see p. 609 this volume*

HASTIE, *Circuit Judge*

This case has been submitted for final adjudication on original petition, motion to dismiss, answer and stipulations covering the essential facts. The proceeding is a statutory one authorized by Act No. 86 (2 V.I.C. § 1 et seq.), First Legislature of the Virgin Islands, approved by the Governor on May 24, 1956. That enactment governs and regulates the attendance of witnesses before the Legislature and its committees. It requires that persons generally, and particularly "all officers of the Government of the Virgin Islands", excepting only the Governor himself, "shall appear and give and furnish to the Legislature of the Virgin Islands, or any of its committees, upon request, such information, records, and documents as the legislature or the committee may deem necessary or proper for the achievement of its legal and authorized purposes". To enforce this duty the Legislature itself, when in session, is empowered to order the arrest of a contumacious witness. But if a witness refuses to honor a subpoena of a legislative committee "when the legislature is not in session", Section 4(b) of the Act (2 V.I.C. § 8(b)) specifies that ". . . the District Court of the Virgin Islands may

compel the attendance of the witnesses, the giving of testimony, and the production of books, papers, documents, and accounts, as required by the subpoena issued by the committee, on the filing by the committee of a petition to the court asking that the witness be so compelled."

Relying upon that subsection the Finance Committee of the Legislature has filed the present petition asking that this court require Percy De Jongh, Commissioner of Finance of the Virgin Islands, to appear before the committee and produce records of government expenditures for the period July 1, 1954 to September 30, 1954. The petition alleges that the Finance Committee is a standing committee of the Legislature, duly constituted and empowered to act by and in accordance with the Standing Rules of that body. In addition, a resolution, Bill No. 293, passed on the 59th day of the 1956 Regular Session of the First Legislature and enrolled on June 7, 1956, the 60th and last day of that session, instructed the Finance Committee to investigate certain public expenditures, with particular reference to special disbursements for travel under Act No. 37 (April 11, 1955, § 7; 3 V.I.C. § 611) of the First Legislature, "and to make a full and complete report to the Legislature at its next session, regular or special."

It also appears that Rule XI, Section 4(a) of the Standing Rules of the Legislature provides that the Finance Committee ". . . shall make such studies and examinations of executive departments and agencies as it deems necessary or as required by resolutions of the legislature or by law . . ." Rule XI, Section 4(b) of the Standing Rules provides that ". . . The Committee on Finance shall continue in existence during any recess of the legislature and after final adjournment and until the convening of the next legislature and shall have the same powers and duties as while the legislature is in session."

. . Acting under the special and general powers which the

Legislature had thus undertaken to confer upon it, the Finance Committee, functioning after the sine die adjournment of the First Legislature, has initiated such an investigation as Bill No. 293 describes and authorizes. On July 10, 1956, in the course of that investigation the Finance Committee issued and caused to be served upon Percy De Jongh, Commissioner of Finance of the Virgin Islands, a subpoena duces tecum directing him to appear before the committee on July 16, 1956, and to bring with him ". . . copies of all Vouchers and Schedules of payments covering expenditures made by the Department of Finance of the Government of the Virgin Islands for the period July 1, 1954 to September 30, 1954." Commissioner De Jongh refused to appear as directed and this suit was instituted to compel him to do so.

The Commissioner of Finance, who is a department head and responsible as such directly to the Governor, did not act on his own initiative in this matter. Rather he obeyed a formal order of the Governor, Executive Order No. 14 of July 5, 1956, which reads in principal part as follows:

". . . WHEREAS, the Virgin Islands Legislature had no power or authority to create any committee or committees to act for the Legislature after it had adjourned sine die, and any such committee has no official standing or legislative functions, if any such committee shall attempt to usurp and exercise legislative powers which it does not possess, then such extra legal activities on its part are not to be countenanced and abetted by the Executive Branch of the Virgin Islands Government.

"Now, Therefore, I, Walter A. Gordon, Governor of the Virgin Islands, do hereby order and direct that no Commissioner or head of any executive department or establishment, or any of the employees of the same, shall appear before any Interim Committee of the Legislature, whether in response to a verbal or written request or summons, to answer any questions or to give information, or to produce any books, records, papers or other documents pertaining to the administration of the Government of the Virgin Islands without my written approval."

All facts stated in the foregoing recital have either been stipulated by the parties or are proper subjects of judicial notice and constitute the findings of fact of this court in this cause. Judicial notice is also taken of the fact that during the pendency of this suit the Governor of the Virgin Islands has called a special session of the First Legislature to convene September 24, 1956.

 The issue thus joined is evident. In Rule XI, Section 4(b) of the Standing Rules, and Section 4(b) of Act No. 86 (2 V.I.C. § 8(b)), as well as by adopting a resolution authorizing the present investigation just before its sine die adjournment, the Legislature made clear its desire and intention that the Finance Committee proceed with the investigation of public expenditures after the termination of the regular legislative session. The Executive, however, believes that such authorization is beyond the power Congress has conferred upon the Legislature of the Virgin Islands and, therefore, has caused the respondent, De Jongh, to refuse to honor the Finance Committee's subpoena. In these circumstances this court must decide whether the Congressional grant of status and authority to the Legislature of the Virgin Islands, which appears in the Revised Organic Act of the Virgin Islands, Act of July 22, 1954, ch. 558, 68 Stat. 497 (prec. 1 V.I.C.), 48 U.S.C., 1952 ed. supp. 111, §§ 1541-1644, enables the Legislature to empower its committees to conduct official inquiries and investigations after final adjournment of the legislative session.

Section 6(g) of the Revised Organic Act of the Virgin Islands, (Act of July 22, 1954, ch. 558), 68 Stat. 499 (prec. 1 V.I.C.), 48 U.S.C., 1952 ed. supp. 111, §§ 1572(g), reads as follows:

"The legislature . . . shall have and exercise all the authority and attributes, inherent in legislative assemblies, and shall have the power to institute and conduct investigations, issue subpoena to witnesses . . ."

This provision shows of its fact that beyond conferring general legislative authority on the Legislature of the Virgin Islands, Congress has seen fit to add a particular and separately stated grant of "power to institute and conduct investigations." In this connection it is not disputed that the Legislature can delegate investigatory authority to a duly constituted committee of its members. It is also to be observed that Congress granted this power to conduct investigations in unqualified terms, saying nothing about limiting or restricting the time during which investigations may be conducted. One must look elsewhere to find any basis for argument that such a limitation of the comprehensively stated power exists.

Accepting this reasoning, the respondent argues that section 7 of the Revised Organic Act (July 22, 1954, ch. 558), 68 Stat. 600 (prec. 1 V.I.C.), 48 U.S.C., 1952 ed. supp. 111, § 1573, should be read as imposing an implied time limitation on the legislative investigatory power. On its face that section purports to do no more than to regulate the time, frequency and duration of regular and special sessions of the legislature, limiting regular sessions to a single annual session of not more than 60 calendar days and special sessions, which may be called only by the Governor, to an aggregate of 30 calendar days in any year. It is reasoned, however, that a legislature which is constitutionally limited in session time and whose membership has no power to convene a special session is so circumscribed as to be devoid of all power, including the power of investigation after the termination of its restricted regular session unless the constitution expressly provides otherwise.

Such a conception has been adopted by some state courts and rejected by others in interpreting their state constitutions. Thus, each side in the present controversy can urge in support of its construction of the Virgin Islands Organic

Act the analogy of judicial interpretations of various state constitutions which, in comparison with each other and with the Virgin Islands Organic Act, exhibit both similarities and differences. With Ex parte Hague, 1929, 104 N.J. Eq. 369, 145 Atl. 618; Hastings v. Hofstadter, 1932, 258 N.Y. 425, 180 N.E. 106; State ex rel. Robinson v. Gluent, 1948, 30 Wash. 2d 194, 191 P.2d 241; contrast Dickinson v. Johnson, 1915, 117 Ark. 582, 176 S.W. 116; Swing v. Riley, 1939, 13 Cal.2d 513, 90 P.2d 313; Fergus v. Russel, 1915, 270 Ill. 304, 110 N.E. 130. But, for present purposes this body of case law establishes little more than that sensible men may be inclined to either view of the general proposition and that factors peculiar to the local problem of constitutional construction are likely to be decisive in a given case. Indeed, the separate and unqualified grant of power to conduct investigations distinguishes the Virgin Islands Act and the problem of interpretation it presents from all of the cited analogues.

Here we are interpreting an Act of Congress. That Act should be viewed in perspective. This court takes judicial notice that it is the normal and accepted procedure for committees of Congress, acting pursuant to legislative resolutions, to conduct inquiries after the sine die adjournment of Congress. See discussion in McGrain v. Dougherty, 1927, 273 U.S. 135, 161-174, 47 S. Ct. 319, 71 L. Ed. 580. True, session time for Congress is not limited as are the sessions of the Virgin Islands Legislature. But the fact remains that the Congress, which in unqualified terms authorized the Virgin Islands Legislature to conduct investigations, is itself experienced in and accustomed to committee investigations authorized by resolutions and conducted after final legislative adjournment. If it had intended a time limit on Virgin Islands investigations, different from its own legislative procedure, it seems likely

that it would have viewed this as an abnormal stricture and, therefore, would have made it explicit.

There is more to the historic setting. It is common knowledge and may be judicially noticed that the Legislative Assembly of the Virgin Islands and the two Municipal Councils, the bodies which were replaced by the present Legislature, caused their committees to function after as well as during legislative sessions. The most recent formal authorization of that antecedent practice which this court has discovered appears in a "Resolution to Create Standing Committees of the Legislative Assembly of the Virgin Islands", adopted August 7, 1952, by the Second Session of the Seventeenth Legislative Assembly. Section 4 of that Resolution reads as follows:

"The Chairman of the Assembly shall determine what legislation, appointments, studies and other matters fall within the jurisdiction of the respective committees and shall make appropriate assignments to such committees whether or not the Assembly is in session."

Thus, Congress enacted the Revised Organic Act in historic context where both its own normal legislative practice and normal Virgin Islands practice showed legislative committees functioning routinely whenever the occasion required, without accommodation to the convening or adjourning of legislative sessions. It seems quite unlikely that if Congress had intended to change the Virgin Islands practice, it would have affirmatively authorized the new Legislature to conduct investigations without a qualifying statement of the intended time limitation.

Still another consideration seems relevant. The whole course of national legislation with reference to territories and possessions of the United States has been in the direction of greater self government and the granting of greater powers to the democratically chosen instrumentalities of local self government. The grant of independence to the

219

Philippine Islands, the autonomy which Puerto Rico has acquired within our nation by Congressionally sanctioned compact, and the serious consideration Congress has already given legislation for Alaskan and Hawaiian statehood are but the more dramatic manifestations of a liberal policy which successive Congresses have sought to implement. Indeed, Senate Report No. 1271, which accompanied the proposed Revised Organic Act of the Virgin Islands, stated as one of the justifications of the measure that "it would give a greater degree of autonomy, economic as well as political, to the people of the Virgin Islands." 2 U.S. Code Cong. and Adm. News, 1954, 83rd Cong. 2d sess., 2585, 2586. The interpretation urged by respondent would attribute to Congress a purpose to move, albeit a very short step, in the opposite direction. For, in the constituting of the Government of the Virgin Islands, the Legislature alone is elected by popular vote. Of course Congress is free to curtail the powers of that territorial legislature, among them its power to investigate the local administration of the public business. But a court should be reluctant to find such a reversal of declared direction by implication when the language of Congress does not compel it.

Finally, a restrictive rule in this case would impose a clog on normal governmental processes other than the type of investigation now pending. All legislative committee work would be drastically restricted. At argument of this case it was pointed out that a special session of the Legislature had just been called to consider and formulate a major tax program for the Virgin Islands. Under the limitation of legislative power for which respondent contends here, the Finance Committee would have no power in the weeks preceding that session to assemble officially, summon witnesses, obtain professional legal and economic guidance and otherwise prepare itself to recommend a considered bill to the Legislature. The multiplication of such cases

might well become a serious handicap to good government, particularly since the Organic Act requires actual legislative sessions to be so brief that the duration and coverage of committee hearings at session time must necessarily be rather limited. Here again, if Congress wishes thus to circumscribe territorial legislative activity it is entirely free to do so. But a court should not impose a restriction so far reaching and potentially so disruptive of the normal functioning of government by imputing to the language of Congress a meaning which the text does not require.

It is the legal conclusion of the court that no implied limitation of time restricts the power Congress has expressly conferred upon the Legislature of the Virgin Islands to conduct investigations. The particular limitations Congress has imposed upon the duration of sessions of the Legislature do not affect the distinct and separately conferred power to conduct investigations. These conclusions will be made effective by an order denying respondent's motion to dismiss the complaint and a final decree granting petitioner the relief it seeks.

The court has not overlooked an additional point made in argument, but not in respondent's answer or in the stipulation of facts, that the subpoena duces tecum served upon respondent is unnecessarily and unreasonably broad in requiring him to bring in records of all public expenditures made during a three month period. In the state of this record that issue cannot be decided. But the Court will not foreclose it.

The decree will direct the respondent to appear before the Finance Committee of the Legislature in response to its subpoena duces tecum, but that decree shall recite that it is entered without prejudice to respondent's right to raise before the committee and, if subsequent occasion should arise, before this court any claim that in the circumstances

of the case the demand for information is unreasonably and improperly comprehensive.