**SENATE SELECT INVESTIGATING COMMITTEE, Petitioner,**

**v.**

**POE FAUMUINA, Respondent.**

High Court of American Samoa
Trial Division

CA No. 104-04

December 29, 2004

Before RICHMOND, Associate Justice, and TAPOPO, Associate Judge.

Counsel: For Petitioner, Roy J.D. Hall Jr.
   For Respondent, Matthew Pavelich, Assistant Public Defender

## JUDGMENT OF CONTEMPT OF THE
## LEGISLATURE OF AMERICAN SAMOA

### Background

In July 2004, the 28th Legislature adopted S.R. No. 28-12 during its Second Regular Session, a resolution establishing the Senate Select Investigating Committee ("SSIC"). The Senate formed the SSIC pursuant to its authority granted under A.S.C.A. §§ 2.1001-2.1018. S.R. No. 28-12 authorizes the SSIC to conduct investigations during the regular sessions, special sessions, and interim periods of the 28th Legislature. On September 13, 2004, the 28th Legislature concluded its fourth and last regular session and adjourned for the year. On November 10, 2004, the SSIC issued and had served a subpoena to Respondent Poe Faumuina ("Faumuina") to appear before the committee on November 18, 2004, to testify and produce certain documents. Faumuina failed to appear before the committee on that day, and on November 23, 2004, the SSIC applied to this Court to have Faumuina held in contempt, pursuant to A.S.C.A. § 2.1016(b).

To properly determine the SSIC's contempt application, we break our analysis into two parts. The first part examines whether or not a legislative committee has the authority to issue subpoenas and submit applications for contempt when it acts after a current legislature adjourns its last regular session *sine die*.[1] Then, and only after a positive response

---

[1] The term "*sine die*" refers to a current legislature's final adjournment at the conclusion of its fourth and last regular session when another regular session of the current legislature is not prescribed.

to the first issue, do we reach the second part of the analysis -- an examination of the merits of the contempt application.

## I. May the SSIC Operate Beyond the Adjournment *Sine Die?*

■ A.S.C.A. § 2.1003 provides that an investigative committee "may exercise its powers . . . in the interim between sessions when so provided by law or by the resolution by which the committee was established or from which it derives its investigatory powers." S.R. No. 28-12, creating the SSIC, provides that "the duration of the Senate Select Committee shall be for the twenty-eighth Legislature . . . and the said select committee is authorized to hold and continue its proceedings and hearings during the regular sessions, any special sessions, any recess or interim periods of the twenty-eight Legislature . . . ."

Thus, the document granting the committee power does not expressly give the committee power to operate beyond adjournment of the Fourth Regular Session of the 28th Legislature. It also does not expressly take that power away. The document does, however, authorize committee action during "recess or interim periods." It is this Court's role to interpret that phrase and determine whether or not it authorizes the SSIC to act beyond the close of final regular session. *See Alamoana Recipe, Inc. v. American Samoa Gov't*, 24 A.S.R.2d 156, 157 (Trial Div. 1993) (indicating that it is the High Court's responsibility to interpret territorial statutes); *American Samoa Gov't v. Falefatu*, 17 A.S.R.2d 114, 140 (Trial Div. 1990).

In *Senate Select Investigation Committee v. Horning*, 3 A.S.R.2d 14 (Trial Div. 1986), the court confronted a similar set of facts. In that case, the then existing SSIC attempted to hold in contempt a subpoenaed witness who refused to testify. That investigation committee issued the subpoena between the Legislature's first and second regular sessions and the defendant asserted that the SSIC did not have authority to take such action. The court held that under A.S.C.A. § 2.1016, a committee sitting between regular sessions of the legislature in place is an "interim committee" and therefore could properly apply for a contempt citation after a subpoenaed witness refuses to testify.

In the present controversy, however, the facts slightly differ. Here, the subpoena and the contempt application were undertaken after the final regular session of the 28th Legislature had adjourned, not between two regular sessions, as was the case in *Horning*. Therefore, the SSIC action took place after the 28th Legislature had met for the last time in regular session.

Some courts have held that a legislature loses its lawmaking powers after final adjournment and therefore any power the legislative committees

enjoyed during the regular sessions or interim periods between session also dissolves. *Swing v. Riley*, 90 P.2d 313, 316 (Cal. 1939); *Tipton v. Parker*, 74 S.W. 298, 298 (Ark. 1903). In *McGrain v. Daugherty*, 273 U.S. 135, 180 (1927), the United States Supreme Court, in dicta, implied that the issue may turn on whether the legislative body will return its same members during the next year, or whether newly elected members will take seat. The Court indicated that a legislature with members returning in the next legislature might allow its committees to operate after the final session of the previous legislature. *McGrain*, however, construed the powers of the United States Congress, and therefore, the interpretation of committee powers in that case is not binding upon other jurisdictions' legislative bodies. *See Petition of Special Assembly Interim Committee on Public Morals of California Legislature*, 83 P.2d 932, 937 (Cal. 1938).

In contrast, the Third Circuit, in the most recent relevant available case, concluded that a legislative committee in that jurisdiction could properly subpoena, and cite for contempt, a witness after the legislature had adjourned for the year. *In the Matter of Petition of the Finance Committee of the Legislature of the Virgin Islands*, 242 F.2d 902, 907 (3rd Cir. 1962). The court noted:

> It may be granted that a legislature loses the present power to legislate upon the adjournment of a session sine die. But its members still constitute the legislature, whose legislative powers are merely dormant and suspended between sessions, not finally terminated. Just prior to adjournment, a matter may come up needing to be investigated by a legislative committee which could not possibly complete the investigation and report prior to adjournment. Granting that the function of such a committee is limited to investigation as an aid to possible legislation, is there any incongruity in setting such investigation afoot, with instructions to the committee to report to the legislature at its next regular or special session, or even to the succeeding legislature?

*Id.* at 904.

Other courts have reached the same conclusion. In *Robinson v. Fluent*, 191 P.2d 241, 245 (Wash. 1948), the Washington Supreme Court found that a state investigative committee had the power to operate beyond the final adjournment of the state legislature. The court noted that, "[t]he function of investigation during the interim is an inherent power in the legislature. If there is not present in the constitution a restraint against the exercise of interim investigatory power . . . [then it may] be projected into the interim." *Id.* Additionally, New York's highest state court, in *People v. Backer*, 185 N.Y.S. 459, 461 (N.Y. 1920), found that absent a

constitutional provision, it saw no reason why an investigative committee could not be granted power to operate beyond final adjournment. Further, the Texas Supreme Court confronted a legislative committee who issued a subpoena after adjournment of the state legislature. *Terrell v. King*, 14 S.W.2d 786 (Tex. 1929). In that case, the court responded by finding that the state legislature determines its own procedures and therefore, if the legislature wanted to allow its committees to operate beyond adjournment, the court would not interfere. Lastly, in *State v. Aronson*, 314 P.2d 849 (Mont. 1957), the Montana Supreme Court held that the "investigative power exists in the legislative branch . . . [and it] may be exercised after final adjournment as well as during the session."

▮ Taking the above law into consideration, we find that a legislative committee, sitting after adjournment *sine die*, has the power to issue subpoenas and submit applications for contempt. This Court does not believe that it makes practical or theoretical sense to conclude that a legislative committee immediately looses all investigatory powers upon final adjournment *sine die* of the particular legislature's last regular session.

Article II, Section 6 of the Revised Constitution of American Samoa provides that "[e]ach senator shall hold office for a term of four years . . . [and that the term] shall commence at noon on the third day of January . . . ." Therefore, if a senator is to complete his full four years of service, his term must end at noon on the third day of January. It is inconsistent with the plain language of our Constitution to hold that a senate committee must cease its activities several months before the end of the committee members' term of office.

Moreover, the Legislature provides a necessary and fundamental service to the people of this territory, and we do not think it sensible to find its members powerless to perform their legislative duties during a substantial gap after a particular legislature concludes its final regular session. Committees such as the SSIC perform investigations important to the public welfare of the territory, and we do not see any persuasive justification for limiting their ability to operate during this final period. This period is, in reality, an interim period between the last regular session of a legislature and the first regular session of the next legislature. There is no fictional legal basis for altering this plain fact.

▮ Further, we reject the notion that a committee's investigatory powers are unalterably linked to the Legislature's lawmaking powers. Some courts have suggested that a committee loses all investigatory powers once a legislature's lawmaking ability ceases after the final session. However, we believe that, although a committee's primary task is to investigate an issue and report back to the Legislature, there is no

legitimate reason why a committee may not perform that task at a time when the Legislature itself is not in session, even if that means only the next Legislature will have that committee's report. In many situations, we assume, the new legislature will be equally interested in tackling whatever issue the previous legislature tasked the committee to investigate. The new legislature should have the opportunity to have and consider that committee's results.

Also, there is a real possibility that in the future a pressing issue may arise just before adjournment. In such a situation, we feel that without compelling constitutional or statutory restrictions, forcing delay in the formation of a committee to begin its investigation until the first regular session of the next legislature would be an impractical and artificial barrier to legitimate legislative needs and therefore contrary to the best interest of the public.

■ Lastly, we find our position further strengthened by considering the fact that even after adjournment *sine die*, the Legislature may still be called back by the Governor for a special session. *See* REV. CONST. AM. SAMOA art. II, § 8. This supports the view that the Legislature is not completely and permanently disbanded upon final adjournment *sine die*, but instead is simply in an interim period.

Therefore, we hold that on November 10, 2004, the SSIC's power to issue subpoenas was in full force and effect. The SSIC had adequate authority to issue such a subpoena to Faumuina and thereafter submit an application for contempt.

## II. Should Faumuina be Cited for Contempt?

■ Under A.S.C.A. § 2.1010, a committee may subpoena a witness to give testimony and provide documents. On November 10, 2004, the SSIC issued such a subpoena to Faumuina, asking him to testify before the Committee on November 18, and produce certain relevant documents. It is undisputed that Faumuina failed to appear at that hearing and failed to produce the requested documents. A.S.C.A § 2.1016(a)(1) provides that a person shall be in contempt if he "fails or refuses to appear before the committee in compliance with a subpoena . . . ." A.S.C.A § 2.1016(a)(2) provides that a person shall be in contempt if he "fails or refuses to furnish any relevant . . . document subpoenaed by . . . an investigating committee."

■ Faumuina excuses his defiance of the SSIC's subpoena on the ground that the Attorney General of American Samoa personally advised Faumuina that the subpoena was invalid and he was not required to honor the subpoena. Indeed, the Attorney General issued his Legal Opinion No. 002-04, dated October 6, 2004, that the 28th Legislature

170

was officially closed by the adjournment *sine die* of its fourth and last Regular Session, and the closure terminated the SSIC's authority to conduct further investigations and issue subpoenas for that purpose. The Attorney General affirmed his opinion during the contempt application hearing and confirmed that he personally advised Faumuina, shortly after the SSIC's subpoena was served on Faumuina, that the subpoena was invalid. He also advised Faumuina, whose status as an American Samoa Government employee had recently ended, that he could not provide legal services to Faumuina and that it was Faumuina's decision whether to appear in response to the subpoena. Clearly, however, Faumuina accepted and relied upon the Attorney General's legal opinion in deciding not to appear as subpoenaed. Any person subpoenaed for legislative investigation purposes who ignores the subpoena puts himself at risk of being cited for contempt. Failure to appear even in good faith reliance on an attorney's advice, while appropriately considered in mitigation for sentencing, is no defense and does not protect him from being held in contempt. *See United States v. Monteleone*, 804 F.2d 1004, 1011 (7th Cir. 1986); *United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986); *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex. 1995).

The SICC's subpoena served on Faumuina was duly and regularly issued. Faumuina clearly had knowledge of the SSIC's subpoena and the ability to comply with the subpoena. He failed to appear before the SSIC to testify and to produce requested relevant documents as scheduled in the subpoena. He claims to have acted in reliance, perhaps in good faith but certainly not with justification, on the Attorney General's incorrect opinion on the validity of the subpoena. Faumuina's failure to appear and produce was willful and contemptuous. Faumuina is, therefore, in contempt of the Legislature.

### Conclusion

█ Pursuant to A.S.C.A. § 2.1016, Faumuina is in contempt of the Legislature and, pursuant to A.S.C.A. § 2.1018(a), is subject to the punishment prescribed for a class C misdemeanor.[2] We have taken into account Faumuina's claim of good faith reliance on an attorney's advice. For his contempt, Faumuina shall be imprisoned for 15 days at the Territorial Correctional Facility and fined $300.00. However, the term of imprisonment and fine are suspended and Faumuina is placed on

---

[2] The punishment prescribed for a class C misdemeanor is imprisonment up to 15 days, A.S.C.A. § 46.2301(7), or a fine up to $300.00, A.S.C.A. § 46.2102(a)(3), or both. When the sentence is suspended or imposition of the sentence is suspended, a class C misdemeanant may be placed on conditional probation for at least six months and no more than two years. A.S.C.A. §§ 46.2203-.2204.

probation for two years on condition that, when subpoenaed at any time by a legislative investigation committee during the two-year term of probation, he shall appear before the investigation committee, and he shall testify and produce requested documents or things, absent a properly invoked objection or privilege.  It is so ordered.